# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RACHEL SPIVACK

## DEFENDANTS

CITY OF PHILADELPHIA AND LAWRENCE S. KRASNER

**(b)** County of Residence of First Listed Plaintiff __PHILADELPHIA__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __PHILADELPHIA__
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sidney L. Gold, Esquire - Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
PRFPA, First Amendment

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000 IN EXCESS

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/12/2022

SIGNATURE OF ATTORNEY OF RECORD
/S/ SIDNEY L. GOLD, ESQUIRE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 4622 Walnut Street, #1R, Philadelphia, PA 19139 _____

Address of Defendant: _____ 3 South Penn Square, Philadelphia, Pennsylvania 19107 _____

Place of Accident, Incident or Transaction: _____ 3 South Penn Square, Philadelphia, Pennsylvania 19107 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/12/2022 _____  /s/ Sidney L. Gold, Esq. _____  21374 _____

*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ SIDNEY L. GOLD, ESQUIRE ___, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/12/2022 _____  /s/ Sidney L. Gold, Esq. _____  21374 _____

*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| RACHEL SPIVACK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| CITY OF PHILADELPHIA AND | : | |
| LAWRENCE S. KRASNER | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (☑)

| | | |
|---|---|---|
| 04/12/2022 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACHEL SPIVACK | : | |
| *Plaintiff,* | : | CIVIL ACTION NO._____ |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| and | : | |
| LAWRENCE S. KRASNER | : | |
| *Defendants.* | : | |
| _____ | : | |

**COMPLAINT AND JURY DEMAND**
**(First Amendment to the United States Constitution;**
**Pennsylvania Religious Freedom Protection Act, 71 P.S. § 2401 et seq.)**

## I.   PRELIMINARY STATEMENT

1.      This action involves the systemic effort of the Defendants, the City of Philadelphia and District Attorney Lawrence S. Krasner ("Defendant Krasner"), and those who report to them, to flagrantly violate federal and state law, and specifically, the Free Exercise Clause of the First Amendment to the United States Constitution, and the Pennsylvania Religious Freedom and Protection Act, 71 PA. STAT. AND CONS. STAT. ANN. §§ 2401-07 ("PRFPA"), in a concerted and deliberate effort to violate the rights of employees of the Philadelphia District Attorney's Office.

2.      The Plaintiff, Rachel Spivack, was an Assistant District Attorney and employee of the Defendants. She objects to receiving a COVID-19 vaccination based on her sincerely held religious beliefs. Plaintiff challenges the policies and actions described below on their face and as applied to Plaintiff. She brings this action for injunctive and declaratory relief, as well as compensatory damages, to prevent the immediate threat of interference with her constitutional and statutory rights by the City of Philadelphia and Defendant Krasner.

1

II.   **JURISDICTION AND VENUE:**

3.      This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

4.      Venue is proper in this District under the provisions of 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims in this case occurred in this district.

III.   **PARTIES**

6.      Plaintiff, Rachel Spivack, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 4622 Walnut St #1R, Philadelphia, PA 19139. She is an employee of the City of Philadelphia.

7.      The City of Philadelphia ("Defendant City") is a municipality and political subdivision of the Commonwealth of Pennsylvania, with municipal offices, including the District Attorney's Office ("DAO"), located at 3 South Penn Square, Philadelphia, Pennsylvania 19107.

8.      Lawrence S. Krasner ("Defendant Krasner") is and has been the District Attorney of Defendant City from January 2, 2018, and whose office is located at 3 South Penn Square, Philadelphia, Pennsylvania 19107. He is being sued in his official capacity as District Attorney of the City of Philadelphia.

9.      At all relevant times, all Defendants were acting under color of state law.

10.      At all relevant times, the actions taken by Defendants deprived the Plaintiff of her constitutional and statutory rights.

## IV.    STATEMENT OF FACTS

11.    On or about April 9, 2021, Plaintiff, received an offer of employment from the Defendants, (collectively "Philadelphia DAO"), to begin in September of 2021.

12.    On or about September 3, 2021, Plaintiff Spivack received an e-mail from the Philadelphia DAO stating that all employees must show proof of vaccination or receive an approved exemption. A true and accurate copy of that e-mail is attached hereto as **Exhibit 1**.

13.    On or about September 13, 2021, Plaintiff Spivack began her employment with the Philadelphia DAO as an Assistant District Attorney.

14.    On or about September 19, 2021, Plaintiff Spivack submitted a letter from her Rabbi requesting a religious accommodation to the Philadelphia DAO's COVID-19 vaccine requirement. A true and accurate copy of that letter is attached hereto as **Exhibit 2**.

15.    On or about December 8, 2021, Plaintiff received an e-mail from the Philadelphia DAO requesting further documentation regarding her religious exemption request which was due on December 22, 2021.

16.    On December 22, 2021, Plaintiff Spivack submitted the response to the requested questions regarding her religious beliefs. A true and accurate copy of that response is attached hereto as **Exhibit 3**.

17.    On March 2, 2022, Plaintiff Spivack received an e-mail from Osha Thomas ("Thomas"), special assistant to Deputy Chief of Staff Cecilia Madden, ordering Plaintiff to attend a "mandatory" meeting with Defendant Krasner's Executive Team, including Bob Listenbee ("Listenbee"), First Assistant; Carolyn Temin ("Temin"), First Assistant; Mike Lee ("Lee"), Chief of Staff; and Cecilia Madden ("Madden"), Deputy Chief of Staff, to discuss her

religious exemption request. Said meeting was scheduled for a mere duration of fifteen (15) minutes. A true and accurate copy of that e-mail is attached hereto as **Exhibit 4**.

18.     On March 4, 2022, Plaintiff met with the Executive Team. Plaintiff was informed during said meeting that her religious exemption request was denied and that she would receive a written denial on the following Monday, March 7, 2022. She was told she had fourteen (14) days from the receipt of said written denial to become compliant with the Philadelphia DAO COVID-19 vaccine requirement. If she failed to do so, the Defendants would place her on an involuntary, unpaid period of leave. Plaintiff inquired as to the reason for denial of her religious exemption request, which the Executive Team failed and refused to provide.

19.     On March 7, 2022, Plaintiff Spivack received the written denial of her religious exemption request to the Philadelphia DAO COVID-19 vaccine requirement. Plaintiff Spivack's immediate supervisor, Jordan King ("King"), Juvenile Diversion Unit Chief, was copied on the e-mail and became aware of the situation regarding Plaintiff's denial. A true and accurate copy of that denial is attached hereto as **Exhibit 5**.

20.     The denial of Plaintiff's religious exemption stated that the "law permits employers like the DAO to deny exemptions based on religious beliefs if granting the exemption would constitute an undue hardship. The DAO would face an undue hardship if it did not require all employees to be vaccinated because given the nature of COVID-19 transmission it would not be able to provide its employees with a safe workplace." Notably, there was a footnote attached to "all employees," which carved out an exception for "[e]mployees with serious medical conditions and for whom a doctor has provided a certified medical opinion that the COVID-19 vaccine would be medically contra-indicated," as well as "union represented employees," who are "subject to collective bargaining."

22.     On or about, March 10, 2022, Plaintiff met with Listenbee, who is part of the Executive Team, at which time he informed her that religious exemptions were not being considered or granted at all. Listenbee further informed Plaintiff Spivack that Defendant Krasner had a personal, vested interest in this matter and concluded from his own research into health law that there was no legitimate basis for religious exemptions from the Defendants' COVID-19 vaccination policy. Accordingly, Defendant Krasner reviewed all religious exemption requests personally, and denied each in turn, solely on the basis of his hostility to religion. Plaintiff offered to mask indefinitely in the office and test weekly, but Listenbee failed and refused to engage in the interactive process, citing Defendant Krasner's position that no religious exemptions from or accommodations pursuant to the Philadelphia DAO COVID-19 vaccination mandate were to be approved.

23.     On or about March 16, 2022, Plaintiff discussed with her immediate supervisor, King, whether any accommodations could be provided, such as remote work. The Executive Team informed King that no such exemption or lesser accommodation could be granted, and that vaccination was the only option, because Defendant Krasner had outrightly forbade religious exemptions to the Defendants' COVID-19 Vaccine Mandate.

24.     Upon information and belief, Defendant Krasner directed agents, servants, and employees of the Philadelphia DAO, through official and/or unofficial channels, that religious exemptions from the COVID-19 vaccine requirement therefor were not to be granted under any circumstances. The evidence of this includes, without limitation, that not one (1) single such religious accommodation request has been granted by the Philadelphia DAO, while medical exemptions have been granted, and the representations of Defendant Krasner's discriminatory intent and directives as communicated to Plaintiff and King by Listenbee.

25.     On March 21, 2022, Plaintiff was placed on involuntary, unpaid leave. On April 8, 2022, Plaintiff Spivack was terminated. A true and accurate copy of termination e-mail is attached hereto as **Exhibit 6**.

26.     Upon information and belief, as of the date of this Complaint, not one (1) religious exemption has been granted by the Philadelphia DAO, and based on the representations of the Defendants' Executive Team, nor has any request for religious exemption been meaningfully considered.

27.     Notwithstanding Defendant Krasner's failure and refusal to consider or honor religious exemption requests, and belying any assertion that vaccination is the least restrictive means to achieve workplace safety and that no exemptions can be granted, the Philadelphia DAO has approved numerous medical and administrative exemptions. This disparity reflects a particular hostility to religion on the part of the Defendants.

28.     Defendant Krasner, was aware that (i) the Philadelphia DAO and Defendant Krasner have failed to grant (or even meaningfully consider) any religious accommodation requests; (ii) but have processed and approved medical accommodations; but each, in violation of PRFPA; and (iii) that the accommodation could be granted consistent with Plaintiff's Assistant District Attorney duties; but nevertheless took, continue to take, and threaten to take additional actions against Plaintiff Spivack, including the termination of her employment.

29.     Because the Defendants COVID-19 Vaccine Mandate violates Plaintiff Spivack's fundamental dictates of religion, she is unable to comply with it, and cannot adhere to it, even though it has resulted in the termination of her employment.

30.     Curiously, however, the Philadelphia DAO has granted exemptions from the COVID-19 vaccination policy and accommodations on medical and administrative grounds,

belying any claim that vaccination is necessary and the only available means to achieve workplace safety. The Defendants' willingness to accommodate employees for medical and/or administrative reasons, while denying all employees with objections based on religious reasons, demonstrates arbitrary hostility to religion by the Defendants.

31.     Furthermore, the Philadelphia DAO's COVID-19 vaccine requirement, with respect to COVID-19, does not prevent infection, as breakthrough cases are increasingly becoming more prevalent.[1] The government cannot prove that mandating a vaccine that has not demonstrated prevention or transmission of COVID-19 is the least restrictive means to achieve its purported compelling interest of workplace safety. Among other methods, the Defendants could accommodate Plaintiff Spivack's request by:

   a.   Requiring regular testing to determine infection;

   b.   Requiring masking unless eating or drinking;

   c.   Temperature checks and/or other screening to determine infection;

   d.   Permitting antibody tests to determine natural immunity to infection;

   e.   Allowing plaintiff to work remotely or telework rather than enter the workplace;

   f.   Given the significant level of vaccine compliance within the Philadelphia DAO, accommodating the very few religious exemption requests, which would not constitute a burden.

The Defendants' refusal and failure to consider Plaintiff Spivack's religious exemption request or otherwise accommodate her sincerely held religious beliefs in any of the foregoing manners constitute unlawful religious discrimination.

---

[1] Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

## COUNT I
### (First Amendment)
### Plaintiff v. Defendants

32.     Plaintiff incorporates by reference paragraphs 1 through 31 of this Complaint as though fully set forth at length herein.

33.     The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government's burdening of a sincerely held religious belief. The Supreme Court has held that "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). A non-neutral or non-generally applicable law must be the least restrictive means available to further a compelling government interest in order to withstand strict scrutiny.

34.     Plaintiff's sincerely held religious beliefs prohibit her from receiving any of the presently-available COVID-19 vaccines.

35.     The Defendants' COVID-19 vaccination mandate substantially burdens Plaintiff's free exercise of religion, in that compliance would require violation of her religious beliefs as the sole alternative to suffering adverse employment actions, including suspension and termination, and financial harm.

36.     The Defendants' COVID-19 vaccination mandate is not neutral or generally applicable as a result of its disparate treatment of medical and administrative requests versus religious requests for exemption and accommodation.

37.     The Defendants do not have a compelling interest in requiring Plaintiff to violate her sincerely held religious beliefs as a result of the inconclusive functionality of the presently-available COVID-19 vaccines in preventing viral transmission, carry, and illness. Moreover,

Defendants' interest in mandating the Plaintiff to be vaccinated cannot be compelling where other employees are provided accommodations for non-religious reasons.

38.     Less restrictive means to promote office health and safety are available to the Defendants, including masking, antigen testing, antibody testing, remote work, physical distancing, temperature checks, among others. As such, the Defendants' COVID-19 vaccination mandate fails strict scrutiny.

39.     Plaintiff is entitled to equitable relief as a result of the irreparable harm she has suffered and will continue to suffer as a result of the Defendants' unconstitutional policy.

40.     Plaintiff is entitled to a declaration that the Defendants violated her First Amendment right to the free exercise of religion and an injunction against the COVID-19 vaccination mandate. Further, Plaintiff is entitled to reasonable costs of this lawsuit, including attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as well as damages against the Defendants, including in an individual capacity, in an amount to be proven at trial. The U.S. Supreme Court has held that individual damages are available against violators. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020

## COUNT II
### (Pennsylvania Religious Freedom Protection Act)
### Plaintiff v. Defendants

41.     Plaintiff incorporates by reference paragraphs 1 through 40 of this Complaint as though fully set forth at length herein.

42.     The PRFPA prohibits any law from "substantially burden[ing] a person's free exercise of religion," even if the "burden ... results from a rule of general applicability." 71 Pa. Stat. Ann. § 2404. The actions of the Defendants, through their agents, servants, and employees, have substantially burdened the Plaintiff's religious exercise in refusing to accommodate the

Plaintiff's religious objections to the Defendants' COVID-19 Vaccine Mandate, which constitutes a violation of the PRFPA by compelling conduct which violates a specific tenet of Plaintiff's religious faith. 71 Pa. Stat. Ann. § 2403(4).

43.     Pursuant to the PRFPA, "[a]n agency may substantially burden a person's free exercise of religion if the agency proves, by a preponderance of the evidence, that the burden is all of the following: (1) In furtherance of a compelling interest of the agency. (2) The least restrictive means of furthering the compelling interest." 71 P.S. § 2401. Defendants cannot meet this exception.

44.     Plaintiff faces imminent termination on April 8, 2022, despite her sincerely held religious beliefs which entitle her to exemption and/or accommodation. Because the "exercise of governmental authority which threatens to substantially burden the person's free exercise of religion is imminent," Plaintiff may bring this action without providing the notice required by 71 P.S. § 2405(b) pursuant to 71 P.S. § 2405(c)(1).

45.     The Defendants do not have a compelling interest in requiring this individual Plaintiff to violate her sincerely held religious beliefs as a result of the inconclusive functionality of the presently-available COVID-19 vaccines in preventing viral transmission, carry, and illness. And, the fact that Defendants have granted accommodations for non-religious reasons undercuts the compelling nature of the Defendants' interest in requiring Plaintiff to be vaccinated. Put simply, Defendants' mandate "cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) (cleaned up).

46.    Less restrictive means to promote office health and safety are available to the Defendants, including masking, antigen testing, antibody testing, remote work, physical distancing, temperature checks, among others.

47.    The policies and practices alleged in this Complaint deprive Plaintiff of her rights under the PRFPA. Plaintiff is entitled to injunctive and declaratory relief. As a result of the Defendants' policy in violation of the PRFPA, Plaintiff has suffered, and will continue to suffer, irreparable harm. As such, Plaintiff is entitled to equitable relief.

48.    Plaintiff is entitled to a declaration that the Defendants violated her rights to the free exercise of religion under the PRFPA and an injunction against the Defendants' policy and resultant adverse employment actions.

49.    Plaintiff is entitled to an award of reasonable attorneys' fees due to the Defendants' dilatory, obdurate, and vexatious deprivation of her rights under the PFRPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment against the Defendants, and:

A.  That this Court issue a declaratory judgment that the Defendants' practices and policies alleged in this Complaint are unconstitutional and illegal under the PRFPA and/or the First Amendment, as applied to those submitting exemption and accommodation requests from a policy that substantially burdens sincerely held religious beliefs;

B.  That this Court issue injunctive relief to order that Defendants grant Plaintiff's exemption request pursuant to the PRFPA and/or the First Amendment and reinstate her as Assistant District Attorney;

C.  That this Court issue preliminary injunctive and/or restraining order relief, to preclude Defendants from taking enforcement/punitive action against Plaintiff, including placing Plaintiff on unpaid leave and/or termination, during the pendency of this matter related to her religious accommodation request;

D.  That this Court issue a permanent injunction prohibiting the Defendants from the implementation or application of the policies and practices alleged in this Complaint, and specifically an Order barring the Defendants from refusing to consider religious exemptions;

E.  That Plaintiff be awarded her costs in this action, including reasonable attorney's fees;

F.  That Plaintiff be awarded compensatory damages for the injuries caused by the deprivation of her constitutional rights, including backpay; and

G.  All other appropriate relief.

## JURY DEMAND

Plaintiff Spivack demands trial by jury.

SIDNEY L. GOLD & ASSOC., P.C.

By:   /s/ Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. No.:  21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff**

DATED:  April 12, 2022

## **VERIFICATION**

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.


DATE: 04/06/2022

_____
RACHEL SPIVACK, PLAINTIFF

# EXHIBIT 1

## Vaccination Requirements for DAO Employees

## Osha Thomas <osha.thomas@phila.gov>

Fri 9/3/2021 1:25 PM

To: dmadamchak@widener.edu <dmadamchak@widener.edu>;ashley.avera@brooklaw.edu
<ashley.avera@brooklaw.edu>;jmbabineau7@gmail.com <jmbabineau7@gmail.com>;samuel-baier@uiowa.edu <samuel-baier@uiowa.edu>;rosalie.ebongobayeh@law.bison.howard.edu
<rosalie.ebongobayeh@law.bison.howard.edu>;bentancur.kevin@gmail.com
<bentancur.kevin@gmail.com>;megan.bershefsky@temple.edu
<megan.bershefsky@temple.edu>;saalim.carter.2021@lawmail.usc.edu
<saalim.carter.2021@lawmail.usc.edu>;rchakeji@law.villanova.edu <rchakeji@law.villanova.edu>;mcolon6@law.villanova.edu
<mcolon6@law.villanova.edu>;Maria.digeorge@temple.edu <Maria.digeorge@temple.edu>;lauren.doig@temple.edu
<lauren.doig@temple.edu>;Amando.Dominick@gmail.com <Amando.Dominick@gmail.com>;emery.donatelle.2@bc.edu
<emery.donatelle.2@bc.edu>;ame145@law.miami.edu <ame145@law.miami.edu>;agandy@umich.edu
<agandy@umich.edu>;H. Theresa Z. Glinski <h.theresa.glinski@temple.edu>;Anthony.Gonzalez@temple.edu
<Anthony.Gonzalez@temple.edu>;caroline.hinnenkamp@temple.edu
<caroline.hinnenkamp@temple.edu>;kenyonej@gmail.com <kenyonej@gmail.com>
Cc: Cecilia Madden <Cecilia.Madden@Phila.gov>

 2 attachments (69 KB)
DAO COVID-19 Policy (V5.0).docx; DAO COVID-19 Vaccination Policy.docx;

Hello,

We want to assure you of our continued commitment to maintaining a safe and healthy workplace.  As a supplement to the City's policy, the DAO is issuing some additional guidelines regarding the City's requirement that all employees be vaccinated by September 1, 2021. **All employees need to comply with these policies before attending both the "meet & greet" and first day of work.**

The DA's office is setting a higher standard of health and safety due to the nature of our work, which requires many of us to work indoors and to interface with the public on a regular basis in our roles as public servants.

Compliance with this policy is a condition of your continued employment. Please read these guidelines carefully and read the full policy attached to this message:
- All DAO employees will be required to provide proof of vaccination or apply for an exemption by September 1, 2021.
- Here is link to the **Mandatory Vaccination Form**: https://forms.office.com/g/C0bQj01e3E where you can begin uploading your proof of vaccination.
- Double-masking in lieu of vaccination will be a temporary measure, not an alternative to getting fully vaccinated. It can be applied temporarily in these instances:
  - If you are in the process of getting vaccinated, you may double-mask until you are fully vaccinated (which is two weeks following your second dose of a two-dose vaccine, or two weeks following your dose of a single-dose vaccine).
  - If you have requested an exemption for religious or medical reasons, you may double-mask until you receive a timely response to that request. Exemption requests must be received no later than September 1st.
- The DAO will not administer tests for COVID-19 to unvaccinated employees in lieu of vaccination. DAO employees must get vaccinated or have an approved exemption.

If you have any questions after reading the full policy, please reach out.

Kind Regards,

**Osha Thomas**
Coordinator of Recruiting and Hiring
Special Assistant – Director of Administration
Office of Philadelphia District Attorney Larry Krasner
3 South Penn Square Philadelphia, PA 19107



To:             **All District Attorney Staff**
From:           **DAO COVID-19 Safety Committee**
Date:           **August 13, 2021**
Subject:        **COVID-19 Policy V5.0**

**UPDATED MASKING POLICY**
**AND UPDATED REPORTING REQUIREMENTS & PROCEDURES REGARDING
EXHIBITION OF SYMPTOMS, POSITIVE TEST AND POTENTIAL EXPOSURE TO
COVID-19 V5.0**

_UPDATED MASK POLICY_:[1]

- FOR VACCINATED EMPLOYEES:
  - Vaccinated employees and visitors to the DAO are required to wear masks in the office.
- FOR UNVACCINATED EMPLOYEES:
  - Unvaccinated employees are required to get vaccinated by September 1st and must double-mask until fully vaccinated.
  - Unvaccinated visitors should double-mask while in the office.

**\*\*THIS POLICY IS SUBJECT TO CHANGE WHERE COVID-19 CASE COUNTS WARRANT A CHANGE OR UPDATED CITY/STATE MANDATES WARRANT A CHANGE.\*\***

**Guidance for those who are diagnosed with COVID-19 or have symptoms of COVID-19:**

IF YOU ARE A STAFF MEMBER WHO HAS _TESTED POSITIVE FOR COVID-19_:

- Staff who have been diagnosed with COVID-19 should notify the office immediately by emailing the COVID Safety Committee Co-Chairs: Cecilia Madden (Cecilia.madden@phila.gov), Cheryl Yankolonis (cheryl.yankolonis@phila.gov), Eleni Belisonzi (eleni.belisonzi@phila.gov).
- For privacy reasons, the name of any staff member who tests positive for COVID-19 will not be shared unless express permission has been given by the staff member.
- Once you have sent an email notification to the COVID Safety Committee, the DAO will follow City policy on how to respond to positive COVID-19 diagnoses by:
  - Notifying the City's Health Department and Emergency Operations Center (EOC) so the City can keep proper records on positive cases.
  - Having a member of the COVID Safety Committee conduct an investigation to determine your last date in the office, your possible close contacts within the workplace, and recent locations you worked in other than your designated office or cubicle (a key factor when determining close contacts is to identify

---

[1] Memo to All City Employees from Chief Administrative Officer Stephanie Tipton, dated August 11, 2021.



any staff member who has come in close contact with the individual, being within approximately 6 feet of the COVID-19 case for a prolonged period of time - 15 minutes or longer).
- o Notifying the building management company so that appropriate cleaning and disinfection can be scheduled, in accordance with CDC guidelines.
- o Notifying all close contacts that they may have been exposed to a staff member who has tested positive.
- o Notifying the unit of a confirmed coronavirus case within the unit, for transparency purposes – notice will not contain the identity of the staff member unless expressly authorized.
- Staff may return to work from isolation when they meet BOTH of the following criteria[2]:
  - o At least 24 hours after resolution of fever (determined once off fever-reducing medications like acetaminophen (Tylenol or ibuprofen) and
  - o improvement in respiratory symptoms; and
  - o At least 10 days have passed since the symptoms started.
- Loss of taste and smell may persist for weeks or months after recovery and you need not delay the end of isolation.
- Once recovered, you may continue to test positive for COVID-19 for three months or more without being contagious to others.  You should only re-test if you develop new symptoms of COVID-19.

IF YOU ARE A DAO STAFF MEMBER WHO *MAY BE SICK WITH COVID-19 SYMPTOMS, BUT HAVE NOT TESTED POSITIVE FOR COVID-19*:

- Any staff member who believes that they may be sick (including with cough, fever, or shortness of breath) **should not come to work.**
- A staff member experiencing mild symptoms should contact their health care provider, who may recommend they seek testing for COVID-19.
- The staff member or supervisor should notify the COVID Safety Committee Co-Chairs so that we may conduct any necessary follow up with close contacts.
- Staff may return to work when they meet BOTH of the following criteria:
  - o At least 24 hours after resolution of fever (determined once off fever-reducing medications like acetaminophen (Tylenol) or ibuprofen) and improvement in respiratory symptoms; and
  - o At least 10 days have passed since the symptoms started without testing.
- If symptoms occur while at work, the staff member will be isolated and then sent home immediately and they will be advised to seek medical care.

**Guidance for those who have had contact with someone who has been diagnosed with COVID-19:**

---

[2] "Isolate if you are sick," Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/isolation.html Updated Feb. 18, 2021.


**PHILADELPHIA District Attorney's Office**

"Close contact" is defined as someone who was within 6 feet of an infected person for a cumulative total of 15 minutes or more over a 24-hour period (e.g., three 5-minute exposures to an infected individual for a total of 15 minutes) starting from 2 days before illness onset (or, for asymptomatic patients, 2 days prior to test specimen collection) until the time the infected individual is isolated.

*IF YOU HAVE BEEN IN CLOSE CONTACT WITH SOMEONE WHO HAS COVID-19 EXCLUDING PEOPLE WHO HAVE HAD COVID-19 WITHIN THE PAST 3 MONTHS OR WHO ARE FULLY VACCINATED*[2]:

- Staff may return to work when they meet the following criteria:
  - Quarantine for 10 days (through day 10) without testing **OR**
  - Quarantine for 7 days after receiving a negative COVID test result on day 5 or later since the close contact. **AND**
  - No COVID-19 symptoms.

- After stopping quarantine, staff should:
  - Watch for symptoms until 14 days after exposure.
  - If you have symptoms, immediately self-isolate and contact your healthcare provider.
  - Practice mitigation precautions.

*IF YOU HAVE BEEN IN CLOSE CONTACT WITH SOMEONE WHO HAS COVID-19 AND ARE FULLY VACCINATED OR HAVE HAD COVID-19 WITHIN THE PAST 3 MONTHS*:

- People who have been in close contact with someone who has COVID-19 are not required to quarantine if they have been fully vaccinated against the disease and show no symptoms.
- Fully vaccinated is as follows[3]:
  - Two weeks from the second vaccine dose of Pfizer or Moderna
  - Two weeks after single-dose vaccines (e.g. Johnson & Johnson).
- People who have tested positive for COVID-19 within the past 3 months and recovered do not have to quarantine or get tested again as long as they do not develop new symptoms.
- People who develop symptoms again within 3 months of their first bout of COVID-19 may need to be tested again if there is no other cause identified for their symptoms.

*IF YOU ARE A STAFF MEMBER WHO WAS AROUND A COVID-19 CASE BUT WERE NOT IN CLOSE CONTACT (YOU WERE IN THE SAME INDOOR ENVIRONMENT WITH A COVID-19 CASE, BUT NOT MEETING CRITERIA FOR A CLOSE CONTACT)*:

---

[3]"When to Quarantine," Center for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html Updated March 12, 2021.
[4]"When you've been fully Vaccinated," Center for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html  Updated June 17, 2021.



- Staff members in this circumstance should self-monitor for symptoms for 14 days after your last contact with the COVID-19 case, and quarantine if symptoms develop. You may continue to work your regular schedule, exercising all mitigation practices, such as social distancing, mask wearing, and frequent hand washing, for preventing the spread of COVID-19.

IF YOU ARE A STAFF MEMBER WHO WAS *IN CLOSE CONTACT WITH SOMEONE WHO WAS EXPOSED* TO A COVID-19 INFECTED INDIVIDUAL OR A POSSIBLE CASE:

- You are not required to quarantine unless that person develops symptoms or is diagnosed with COVID-19. You may continue to work your regular schedule, exercising all mitigation practices for preventing the spread of COVID-19.



**DAO Mandatory Employee COVID-19 Vaccination Policy**

We want to assure you of our continued commitment to maintaining a safe and healthy workplace.  As a supplement to the City's policy, the DAO is issuing some additional guidelines regarding the City's requirement that all employees be vaccinated by September 1, 2021.

The DA's office is setting a higher standard of health and safety due to the nature of our work, which requires many of us to work indoors and to interface with the public on a regular basis in our roles as public servants.

Compliance with this policy is a condition of your continued employment. Please read these guidelines carefully:

- All DAO employees will be required to provide proof of vaccination or apply for an exemption by September 1, 2021.
- Double-masking in lieu of vaccination will be a temporary measure, not an alternative to getting fully vaccinated. It can be applied temporarily in these instances:
  - If you are in the process of getting vaccinated, you may double-mask until you are fully vaccinated (which is two weeks following your second dose of a two-dose vaccine, or two weeks following your dose of a single-dose vaccine).
  - If you have requested an exemption for religious or medical reasons, you may double-mask until you receive a timely response to that request. Exemption requests must be received no later than September 1st.
- The DAO will not administer tests for COVID-19 to unvaccinated employees in lieu of vaccination. DAO employees must get vaccinated or have an approved exemption.

**Continued Applicability of Other Infection Control Policies**

This Mandatory Vaccination Policy is a key part of our overall strategy to maintaining a safe workplace in light of this pandemic. This policy is designed for use together with, and not as a substitute for, other COVID-19 prevention measures, including the City's and FJD's updated mask-wearing policy, our reporting COVID-19 exposure or illness policy, and all other mitigation measures. We need your full cooperation and compliance with this and other health and safety policies to make them effective.

**Providing Proof of Vaccination**

You must abide by City policy of uploading your CDC-issued vaccination card, or other written proof of vaccination from your vaccine administrator into OnePhilly by **September 1st, 2021**.

You must also complete a mandatory form, for the DAO, by September 1st, where you must either:

- Upload your vaccination card or other proof of vaccination to the DAO.
- State that you have dropped off a physical copy of your proof of vaccination with Human Resources at the DAO.
- Indicate that you are in the process of receiving your vaccination and share the date in September by which you will be fully vaccinated.
- Indicate that you are applying for a religious or medical exemption or accommodation.

Policy effective 8/13/2021



**How to Request an Exemption or Accommodation**

You may apply for an exemption or accommodation from this policy by completing a Request for Exemption from Vaccination Policy Form and returning it to the COVID-19 Safety Committee. The form can be found HERE. Please include all relevant information, including:

• A description of the accommodation or exemption requested.

• The reason for the requested accommodation or exemption.

The DAO reserves the right to request additional documentation supporting the need for an accommodation or request for any other exemption. We will keep confidential any medical information obtained in connection with your request for a reasonable accommodation or other exemption.

**Determinations**

The DAO makes determinations about requested accommodations and exemptions on a case-by-case basis considering various factors and based on an individualized assessment in each situation. The DAO strives to make these determinations expeditiously and in a fair and nondiscriminatory manner and will inform you after we make a determination. If you have any questions about an accommodation or exemption request you made, please contact Cecilia Madden, Director of Administration.

**Types of Exemption Requests and Accommodations**

*Religious Exemption or Accommodation*

The DAO provides reasonable accommodations, absent undue hardship, to employees with verifiable, sincerely held religious beliefs, observances, or practices that conflict with getting vaccinated. If you believe you need an exemption or accommodation regarding this policy because of your sincerely held religious belief, you are responsible for requesting a reasonable accommodation from the COVID-19 Safety Committee.

*Exemption for Medical Reasons*

Exemptions for other medical reasons may be available on a case-by-case basis for conditions such as pregnancy, breastfeeding, history of certain allergic reactions, and any other medical condition that is a contraindication to the COVID-19 vaccine even if they do not qualify as a disability under federal, state, or local law. The DAO will engage in an interactive dialogue with you determine whether an exemption is appropriate and can be granted without imposing an undue hardship on the DAO or posing a direct threat to you or others in the workplace. Individuals for whom currently available COVID-19 vaccines have not been approved and who therefore are ineligible to receive a COVID-19 vaccine (for example, individuals under a certain age) will be granted an exemption from this policy until they become eligible or until an approved vaccine becomes available for their use. However, the DAO reserves the right to take any necessary and appropriate steps, including imposing alternative COVID-19 prevention measures, to ensure that the individual does not pose a direct threat to the health or safety of others in the workplace.

Policy effective 8/13/2021



*Disability Accommodation*

The DAO provides reasonable accommodations, absent undue hardship, to qualified individuals with disabilities that enable them to perform their job duties. Reasonable accommodation may include appropriate adjustment or modifications of employer policies, including this Mandatory Vaccination Policy. If you believe you need an accommodation regarding this policy because of a disability, you are responsible for requesting a reasonable accommodation from the co-chairs of the COVID-19 Safety Committee.

**Interactive Process**

The DAO will engage in an interactive dialogue with you to determine the precise limitations of your ability to comply with this mandatory vaccination policy and explore potential reasonable accommodations that could overcome those limitations. The DAO encourages employees to suggest specific reasonable accommodations. However, the DAO is not required to make the specific accommodation requested and may provide an alternative effective accommodation, to the extent any reasonable accommodation can be made without imposing an undue hardship on the Office or posing a direct threat to you or others in the workplace.

# EXHIBIT 2



ב"ה

# Congregation Ohr Menachem

September 6, 2021

To whom this may concern:

Peace and blessings.

This letter concerns Rachel Spivack and her need for a religious exemption concerning the covid vaccine mandate. Rachel Spivack is an orthodox Jew who is fully observant of Scriptural and rabbinic laws and guidance. She also has natural immunity to COVID, a fact which was taken heavily into consideration when applying Judaic law to her case.

I am an ordained orthodox rabbi and have served in the rabbinate for over twenty-six years.[1] Currently, I serve as the spiritual leader of an established congregation in Great Neck that welcomes congregants to participate from afar via online sermons and services. Rachel Spivack is an active member of my congregation. She is a person of deep religious conviction and great integrity.

Please be advised that I discussed the matter with her. She cites authentic scriptural sources that underlie valid objections to this vaccine under Torah law with which I am in complete agreement. In fact, our congregation categorically opposes this vaccine as a matter of religious tenet, for these very reasons:

1. We are forbidden to benefit from the live dissection of animals:

    The Torah prohibits removing the limb or organ of a live animal for the purpose of human consumption. This is known as *eiver min hachai*.[2]

    The Torah also prohibits causing excessive suffering to animals. This is called *tzaar baalei chayim*.[3]

    Used in the production stages of the covid vaccines, bovine serum is tissue extracted from a calf in a cruel procedure of live dissection. Scripture prohibits us from sanctioning or benefitting from such inhumane treatment of animals.

2. We are forbidden to use hybridization technologies:

---

[1] I was ordained by renowned Rabbi Pinchas Hirshprung of Montreal in 1995 as well as by other prominent rabbis.
[2] Genesis 9:4.
[3] Exodus 23:5.

Modified messenger RNA and recombinant DNA technologies both constitute a profound violation of the scriptural prohibitions against forbidden mixtures, *isur kil'ayim*:

"Thou shalt not let thy cattle gender with a diverse kind; thou shalt not sow thy field with two kinds of seed; neither shall there come upon thee a garment of two kinds of stuff mingled together.[4] "Thou shalt not sow thy vineyard with two kinds of seed; lest the fullness of the seed which thou hast sown be forfeited together with the increase of the vineyard. Thou shalt not plow with an ox and myass together. Thou shalt not wear mingled stuff, wool and linen together."[5] The Talmud devotes an entire tractate to the concept.[6][10] Intentionally mingling one's own body cells with a foreign, unnatural, or genetically-modified substance – especially one that effectively co-opts one's cells into doing something it was not intended to do by nature – plainly runs afoul of *isur kil'ayim.*[7]

Injecting such forbidden substances directly into one's bloodstream directly challenges scriptural teaching that regards one's body as the repository of a soul made in God's image.

3. We are forbidden to self-flagellate:

In Judaic law, one is not permitted to inject oneself with a vaccine that offers no significant medical curative benefit to the patient, even if it's allegedly good for others. Scripture prohibits inflicting oneself with Biblically-unnecessary gashes, wounds or pokes:

"You are children of the Lord, your God. You shall not poke yourselves..."[8] "You shall not make incisions in your flesh for any soul... I am the Lord."[9] It's further underscored in other scriptural verses.[10] Needless to say, this is a serious Biblical injunction.

In Rachel Spivack's case, since she has natural immunity protecting her from COVID, there is no health need for a needle stab. Obtaining an unnecessary injection would be in violation of Judaic law.

4. We are forbidden to expose ourselves to risk that is unnecessary to the individual (in this case due to natural immunity):

Scripture does not permit exposing oneself to any risk unless there's a significant medical benefit to one's own self that outweighs the risk. The verse states: "Guard your own soul

---

[4] Leviticus 19:19.

[5] Deuteronomy 22:9-11.

[6] Mishna, Masechet Kil'ayim.

[7] Rabbi Yosef Shalom Elyashiv strictly banned cloning humans based on this principle, and only begrudgingly allowed the cloning and genetic engineering of animals for the purposes of "ורפא ירפא] and heal, you shall heal]" (Exodus 21:19), for example, for the purpose of producing replacement organs for humans who suffer from organ failure. Rabbi Chaim of Brisk observed that the principle of "ורפא ירפא", authority has been granted to doctors to heal," refers specifically to healing an individual diagnosed patient, not necessarily to prevention, and certainly not to an amorphous community. Modified mRNA and recombinant DNA technologies are prohibited since a) it's on humans, b) it's for a preventative measure and not a curative therapy, and c) the preventative benefit is mainly for others in an at-risk population, not for the individual discussed in this letter, for whom the actual disease poses negligible risk.

[8] Deuteronomy 14:1.

[9] Leviticus 19:28.

[10] Leviticus 21:5 and ibid 17-24.

scrupulously."[11]

There is consensus among orthodox rabbis worldwide that the flu shot is not Biblically necessary for healthy adults. Likewise, vaccines for sexually transmitted diseases like hepatitis B and human papillomavirus are deemed medically unnecessary for a Torah observant individual (who observes the laws of sexual abstinence and monogamy) by all contemporary orthodox rabbis. Hence, these vaccines are strictly forbidden by scripture.

Similarly, if a Torah-adherent individual has natural immunity or, for some other reason, faces minimal or negligible risk from COVID, he is prohibited to expose himself to the risks of the vaccine. At present, studies suggest that natural immunity gives greater protection from COVID than vaccination would, and that natural immunity is not strengthened by vaccination.[12]

While it would likely not convey any benefit in this particular case, COVID vaccination carries real risks and many unknowns. Hundreds of thousands of adverse reactions, including serious medical events and deaths, have been reported all over the world. As of this writing, nearly 14,000 US deaths have been reported to VAERS, on the CDC website. A majority of these reports have come from ICUs, emergency rooms, physicians, and pharmacies. Seizures, encephalitis, microvascular infarcts, brain bleeds, disseminated intravascular coagulopathies, and sudden multi-system organ failure are just a few health issues observed post-vaccination by medical professionals around the world.

The Torah's default position is that proactive medical interventions, with the risks they necessarily entail, are forbidden and deemed unsafe until proven necessary. Even reactive interventions must be proven through transparent, thorough, unbiased studies, and have benefits that clearly outweigh the risks, for this specific individual. Speculation is no substitute, and approval by governmental agencies is irrelevant in religious Judaic law. There are countless medical procedures that have state and/or federal approval and are still forbidden by scripture. The novel covid vaccine is no different.

5. We are forbidden to ingest or inject a product whose precise ingredients are undisclosed:

Adherents of the Torah are not permitted to ingest or inject a product whose precise ingredients are undisclosed. For example, Moderna's COVID vaccine contains a proprietary lipid called SM-102. This ingredient is proprietary to Moderna, i.e. it's protected by secrecy and not disclosed to the public. There are countless ingredients that the Torah deems unfit for human consumption, and in some cases, forbidden to derive any benefit thereof. An unknown ingredient constitutes a *safek d'orayta*, a questionable Biblical violation, and a Torah-observant individual is obliged to avoid it.

Although there are other grounds in Judaic law for opposing the administration of the COVID vaccine, I have reduced this explanation for the sake of brevity. Rachel Spivack's religious grounds

---

[11] Deuteronomy 4:9; ibid verse 15.

[12] Sivan Gazit, et al, "Comparing SARS-CoV-2 Natural Immunity to Vaccine-Induced Immunity: Reinfections Versus Breakthrough Infections." Preprint, submitted August 24, 2021. https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.

for declining this vaccination are valid and reflect deep personal commitment to her religious practice.

I am happy to discuss this matter with you further, and I welcome correspondence on this topic or any other topics that pertain to Torah and Judaic law. The best way to correspond with me is via email, rabbi@chabadwestboro.org.

In the merit of protecting Rachel Spivack's ability to abide by her religious beliefs, may God Almighty bless you and all of us with health and protection in these difficult times.

Sincerely,

Rabbi Yitzchok Chayempour
Congregation Ohr Menachem Chabad,
Great Neck, NY

# EXHIBIT 3

**Request for Religious Exemption from COVID-19 Vaccination**

**NAME: ____Rachel Spivack____**

## APPLICATION TO SUPPORT REQUEST FOR
## RELIGIOUS EXEMPTION FROM COVID-19 VACCINATION

In order to determine whether your request for a religious exemption from the DAO COVID-19 Vaccination Requirement satisfies legal requirements for a religious exemption, the following additional information must be provided and certified by you as truthful. This information must be provided to Cecilia Madden by 5pm on Wednesday, December 22, 2021, preferably earlier. If you fail to provide this required requested information your exemption request is likely to be denied because there will be incomplete information necessary for the DAO to determine whether your request satisfies legal requirements.  If you need additional time to get this information, please contact Cecilia Madden prior to the December 22 deadline.  If the requested information does not fit on this form, please attach additional pages as necessary.

**Reminder:**  DAO permits employees to select whatever approved COVID-19 vaccine they believe is best for them.

**To Be Completed by Employee:**

1. **Please describe the specific belief that supports your receiving a religious exemption from being vaccinated for COVID-19. [Please note that each vaccine is manufactured differently and that the DAO does not take a position as to which approved COVID-19 vaccine you take. For example, if there is something about the way that the currently-approved COVID-19 vaccines are manufactured that prevents you from receiving them, please identify what that is for *each* vaccine available.]**

All three available brands of COVID-19 vaccines constitute a profound violation of the scriptural prohibitions against forbidden mixtures, *isur kil'ayim*. I believe that our bodies are the repository of the soul made in God's image. Altering our bodies and defiling our blood by injecting mRNA and recombinant DNA technologies constitute a profound violation of the scriptural prohibitions against forbidden mixtures. Orthodox Jews may not intentionally mingle their own body cells with a foreign, unnatural or genetically-modified substance.

The Moderna and Pfizer COVID-19 vaccines are made with mRNA technology. "The mRNA molecules contain the genetic material that provides instructions for our body on how to make a viral protein that triggers an immune response within our bodies," and "this mRNA from the vaccine is released into the cytoplasm of our cells."https://www.hackensackmeridianhealth.org/HealthU/2021/01/11/a-simple-breakdown-of-the-ingredients-in-the-covid-vaccines/
"DNA is the original copy of genetic information, but DNA is not used as the direct source of instructions in the cell. Instead, DNA sends genetic information throughout the cell in the form of messenger ribonucleic acid (mRNA). mRNA is a nucleic acid sequence that is complementary to the template DNA strand, but slightly chemically different. The process by which DNA transfers information to mRNA is called transcription. As such, genes can be turned on and off, and messages sent and delivered throughout the cell, with exact precision. Once mRNA is generated, the information it carries must be converted from one language to another. The mRNA "language" using nucleic acids, or genetic code, is translated to a protein "language" using amino acids." https://lozierinstitute.org/a-visual-aid-to-viral-infection-and-vaccine-production/

**Request for Religious Exemption from COVID-19 Vaccination**

**NAME:  \_\_\_\_Rachel Spivack\_\_\_\_**


The Johnson & Johnson COVID-19 vaccine uses recombinant DNA technology. https://www.fda.gov/media/146305/download This vaccine takes an adenovirus, alters it by replacing a section of its genes with COVID virus genes, and then puts this altered virus into our human cells. https://www.mayoclinic.org/johnson-johnson-adenovirus-vaccine-explained/vid-20510091 "Once inside, the adenovirus escapes from the bubble and travels to the nucleus, the chamber where the cell's DNA is stored." https://www.nytimes.com/interactive/2020/health/johnson-johnson-covid-19-vaccine.html Johnson and Johnson is manufactured using aborted fetal cell lines, specifically the PER.C6 aborted fetal cell lines. https://www.janssenmd.com/janssen-covid19-vaccine/product-properties/product-technology/advac-and-perc6-technology-of-the-janssen-covid19-vaccine  Johnson & Johnson grows the genetically altered adenovirus through the aborted fetal cell lines and then they harvest the virus, filtering all of that material, leaving you with the vaccine. PER.C6 is from an abortion that took place in 1985. https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf

In Midrash Leviticus Rabbah, we read that the soul is a guest in the body and that care of the body is deemed a commandment by the great sage Hillel the Elder, who cited the idea in the Creation story that God made the human in the divine image. Injecting such forbidden substances directly into our bloodstream completely challenges scriptural teaching that regards one's body as the repository of the soul made in God's image. We cannot mix our own human cells with this genetically altered material.


These points are expounded upon in the original letter sent.

2. **Does the belief identified in Question #1 prevent you from receiving other vaccines or just the COVID-19 vaccine?**
   X [All Other Vaccines]
   ☐ Some But Not All Other Vaccines
   ☐ Only the COVID-19 Vaccine

3. **If your belief prevents you from receiving some but not all other vaccines, please identify which vaccines you can receive and which ones you cannot receive and explain the reason for the difference.**

4. **What other vaccines have you received in the past 10 years?**

None.

5. **Have you received a religious exemption for any other vaccine requirements in the past?** x☐ Yes ☐ No

   **If yes, please provide additional details, including which vaccine(s) the exemption was for, when you were granted the exemption, the religious belief underlying the exemption request, and the name of your employer at the time.**

**Request for Religious Exemption from COVID-19 Vaccination**

**NAME:  _____Rachel Spivack_____**


Which vaccine(s) the exemption was for – I was exempted broadly from complying with the University of Pennsylvania's vaccination requirements. The specific vaccine they were asking for prior to the exemption was the tetanus shot.
When you were granted the exemption - 2018
The religious belief underlying the exemption request - In Judaic law, one is not permitted to defile our bodies by injecting forbidden mixtures into our blood and body. Conventional vaccines contain organic matter, from aborted fetal cells, cows, monkeys and chickens, viruses and bacterium, being injected directly into our sacred blood. This organic matter taints our blood and defiles our soul in the same way that the genetic material from COVID-19 vaccines do.
http://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/B/excipient-table-2.pdf
The name of your employer at the time – I was a student at University of Pennsylvania Law School


6. **Does your belief that you should not be vaccinated for COVID-19 derive from a recognized religion?** X [Yes] ☐ No

    **If no, please skip to question 7.**
    **If yes, please answer the following questions:**

    a. **Please provide the name of the religion:** Orthodox Judaism

    b. **Please indicate when you first began to practice this religion:** 2000

    c. **Have the religious leaders of your religion taken the position that the COVID-19 vaccine violates the tenets of the religion?**  X [Yes] ☐ No ☐ Unknown

       **If yes, who, when and how did they take this position (Please attach copies of any public statements or writings that you are aware of where they stated that getting vaccinated for COVID-19 violates the tenets of your religion?) *if attached**

    I have submitted a personal letter written on my behalf from Rabbi Yitzchok Chayempour of Ohr Menachem Chabad.


    d. **Have the religious leaders of your religion taken the position that getting the COVID-19 vaccine does not violate the tenets of your religion?**  X [No] ☐ Unknown

       **If yes, who, when, and how did they take this position (Please attach copies of any public statements or writings that you are aware of where they stated that getting vaccinated for COVID-19 does not violate the tenets of your religion?)**

**Request for Religious Exemption from COVID-19 Vaccination**

NAME: _____Rachel Spivack_____

> e. **Do you belong to an organization or group affiliated with this religion (e.g., church, mosque, synagogue, other group, etc.)?** x☐ Yes ☐ No
>
> **If yes, indicate when you first affiliated with this organization or group:**
> 2015
>
> **If yes, please also provide the following information regarding the organization or**

group.

> **Name:** Congregation Ohr Menachem
>
> **Address:** 778 Middle Neck Rd, Great Neck, NY 11024
>
> **Phone Number:** 516-482-2305
>
> **Website:** magenisraelcenter.com
>
> f. **Do you attend religious services with this organization or group?**  X [Yes] ☐ No
>
> g. **Does your religious organization have any COVID-19 safety protocols in place?**
> X[Yes]
>
> h. **Does your religious organization require proof of vaccination for their leaders or members as a requirement of attending religious services in-person?** X [No]
> If yes, please explain.

7. A*nswered yes to Question #6*

8. **Are there other aspects of your beliefs stemming from your religion or religious belief/belief system related to receiving medical care?**
x☐ Yes ☐ No

If Yes, please explain.

- Sterilization is prohibited.
- Vasectomies are prohibited.
- Sperm donations are prohibited.
- Autopsies are prohibited. In Judaic law, it is forbidden to even perform an autopsy on a dead body. We must respect these bodies as temples of God. We cannot cut apart any dead bodies. Scripture prohibits us from disgracing a corpse in such a way.
- Death is considered when there is the cessation of all brain wave activity, not just cessation of breath and heartbeat. Hospice and end of life care are therefore closely regulated by Jewish law.
- Animal testing is required for new drugs and treatments prior to testing on humans.
- Euthanasia is prohibited. Every measure to preserve life must be taken
- One is prohibited from donating their body "to science."

**Request for Religious Exemption from COVID-19 Vaccination**

**NAME:** ____Rachel Spivack____

9. **Are there any activities relating to your health that you engage in or refrain from related to your religion or religious belief/belief system? (any dietary rules, medical restrictions, etc…).** x☐ [Yes]
**If yes, please describe these activities.**

- I keep strictly kosher, which includes utensils along with all food and drink and medicines.
- I refrain from eating milk and meat together.
- I refrain from eating milk within 6 hours of consuming meat.
- I refrain from eating meat within 1 hour of consuming milk.
- I do not mix fish and meat and rinse my mouth out between consuming them.
- I also hold myself to a higher level than standard kosher which prohibits me from consuming unwatched dairy products (chalav yisrael).
- I avoid taking medications which lack Rabbinic certification or whose ingredients I do not know.
- On various days throughout the year, I do not eat any food or drink any water due to religious fast days.
- On sabbath and holidays, I do not take pain-relieving medications such as Tylenol and aspirin. I only take antibiotics on the sabbath if I have already been taking them at least 3 days prior.
- I avoid any and all medical procedures on sabbath and holidays unless it is immediately life-threatening.
- On yom kippur and tisha b'av we do not apply any ointments or medicinal creams.
- On sabbath I refrain from exercise due to it being considered being medicinal and we refrain from practices that can be considered medicinal on sabbath.
- I do not cut my toenails on the same day. When they are cut, I cut them in a specific order. I flush the cut nails down the drain. I ritually wash my hands after.
- I consult with my rabbi regarding medical care and treatments. It is important to understand that Orthodox Judaism does not have a single central authority. Many decisions related to modern medical treatment and Jewish law require interpretation and extrapolation from ancient sources. As a result, rabbis with different approaches to interpreting rabbinic texts may come to different, but equally valid, rulings about a course of action. One is required to follow the rulings of his or her personal rabbinic authority. This is part of the reason there is variability in some aspects of religious practice within the Orthodox community.
- I dress in accordance with the modesty standards outlined in Jewish law.
- I immerse myself in a ritual bath once a month

10. **Do you have children who attend school?**   X☐ [No]
**If yes, please include their ages, the name of the schools or districts, and whether or not their schools require proof VID-19 vaccination for their teachers, administrative staff or students of eligible age.**

11. **Do you have any additional documentation supporting your application for exemption from the COVID-19 vaccination requirement based on a sincerely held religious belief? Additional documentation may include but is not limited to the following:**

# EXHIBIT 4

## Vaccination Exemption Request Meetings

## Osha Thomas <osha.thomas@phila.gov>
Wed 3/2/2022 2:30 PM

Hello,

I hope all is well. The Executive team wants to meet with you to discuss your exemption request as soon as possible. This meeting is mandatory and will only last about 15 minutes. Please see the time slots below and let me know when you are available.

Thursday, March 3rd - 11:30am-12pm or 4pm-5 pm.
Friday, March 4th -  10:15am-11am, 4pm- 5pm.


Thank you!

**Osha Thomas**
Coordinator of Recruiting and Hiring
Special Assistant to Deputy Chief of Staff, Cecilia Madden
Office of Philadelphia District Attorney Larry Krasner
3 South Penn Square Philadelphia, PA 19107

# EXHIBIT 5

## DAO RESPONSE TO COVID-19 VACCINATION
## EXEMPTION REQUEST

**Date:**    March 7, 2022

**Employee's Name:**   Rachel Spivack

**Response:**

[   ] Exemption request meets legal requirements and should be GRANTED

[✓] Exemption request should be DENIED for failing to meet legal requirements

[   ] Exemption request should be DENIED because employee failed to provide
      requested information

**Legal Analysis:**

**DAO's COVID-19 vaccine policy is a neutral policy with the legitimate
purpose of protecting employees in the workplace from a deadly virus.**
        The DAO's COVID-19 Vaccination Policy is a neutral policy designed to protect
all of its employees from a life-threatening virus.  The COVID-19 pandemic and the
recent more contagious delta and omicron variants have created a public health
emergency for employers who are tasked with keeping the workplace safe for their
employees, their families, and the public.  Employers are legally required to take steps
to ensure employees in the workplace are as safe as possible from contracting the
deadly virus.  People who are vaccinated are safer and less likely to contract or transmit
COVID-19.  People who are unvaccinated have an estimated 11 times greater likelihood
of death and 5 times greater likelihood of being hospitalized.  Additionally, those who
are not vaccinated have a dramatically higher likelihood of transmitting the disease to
other employees, whether those employees are vaccinated or not, since the vaccines
significantly reduce the likelihood of death and serious illness but do not provide 100%
protection against breakthrough infections. The DAO's COVID-19 Vaccination Policy is
aimed at protecting all of its employees in the workplace, their families and the public,
by reducing the likelihood of death and serious illness

**It is an undue burden for DAO to waive the neutral vaccine mandate.**
The law permits employers like the DAO to deny exemptions based on religious beliefs
if granting the exemption would constitute an undue hardship. The DAO would face an
undue hardship if it did not require all employees[1] to be vaccinated because given the
nature of COVID-19 transmission it would not be able to provide its employees with a
safe workplace.  If the DAO allowed unvaccinated employees in the workplace it would
subject other employees and the public with whom we interact and serve to the risk of a
virus that may cause death and serious illness.  Reasonable potential accommodations
do not eliminate the risk that an unvaccinated employee presents.  Weekly testing does
not protect against interim contagion between tests and such testing is expensive,

---

[1] Employees with serious medical conditions and for whom a doctor has provided a certified medical opinion that
the COVID-19 vaccine would be medically contra-indicated may be considered for a reasonable accommodation.
Additionally, vaccination requirements for union represented employees are subject to collective bargaining.

unreliable, and an administrative burden. Mask mandates are not as protective as a vaccine and are difficult to enforce. If employees contract COVID-19 it necessitates quarantining unvaccinated close contacts. That could create a staffing shortage which prevents the DAO from fulfilling our obligations to the courts. The safest way to protect employees from the deadly virus and ensure continued operations is through vaccination of all employees.

**A religious exemption is not warranted under the law based on the information presented.**

In addition to the law permitting the DAO's neutral COVID-19 vaccine policy and not requiring accommodations if they constitute an undue burden for the DAO, _____Rachel Spivack_____ does not present a credible claim that their opposition to the vaccine was based on their religious beliefs. The fact that an individual is religiously devout does not by itself qualify them under the law for a religious exemption. DAO has not designated which currently approved COVID-19 vaccine an employee must take. Consequently, to the extent an employee opposes how the vaccine was manufactured, they have other COVID-19 vaccines from which to choose.

**Conclusion:** The law permits an employer to implement a neutral policy to protect its employees' health. DAO's policy does not target or discriminate against any religious faith and simply requires all employees to take steps to ensure that employees in the workplace are not ravaged by a deadly viral pandemic that is sweeping the world. In addition, it would be an undue burden for DAO to make exceptions for some employees that would seriously compromise their health and the health of other employees, their families, and the public. Finally, the information provided by _____Rachel Spivack_____ does not satisfy the law's requirements for what constitutes a legally valid religious exemption.

_Cecilia Madden_____
Signature

_Cecilia Madden_____
Printed Name



**Philadelphia District Attorney's Office**

Dear Rachel Spivack,

Based on the continued impact of the COVID-19 pandemic, the DAO, City of Philadelphia, and many other partner agencies in the criminal justice system determined that vaccinations are an essential tool in reducing community spread of COVID-19. The DAO required that all employees be vaccinated against COVID-19 or have received an exemption to this requirement. Per the attached response to your exemption request, your request is denied and you are therefore not in compliance with the DAO's policy.

If you fail to either complete a COVID-19 vaccination schedule or obtain at least one dose of a two-part COVID-19 vaccination, by noon on March 18, 2022, you will be placed on Unvaccinated Leave ("U-Vax Leave") beginning on March 21, 2022. You may use accrued leave, with the exception of sick leave, while on U-Vax Leave. If you exhaust your available accrued leave, you will be carried in an unpaid status. Any period of unpaid status beyond 15 days will be considered a break in service. Between now and March 18, 2022, you are not permitted to take accrued leave, unless it was approved by your supervisor in advance of this notification, or if you are taking time to go receive a vaccine.

Employees who receive a first vaccine dose of a COVID-19 vaccine during the U-Vax Leave period will be given an appropriate length of time to complete the vaccine schedule as determined by the type of vaccine but will be required to double mask or wear an appropriate N95 or equivalent.

If you do not obtain the required vaccination while on U-Vax leave, you risk separation from employment.

If you have questions about these requirements, please contact Cecilia Madden, Deputy Chief of Staff, at cecilia.madden@phila.gov or myself.

*Mike Lee*
*Chief of Staff*
*Philadelphia District Attorney's Office*

Cc: Jordan King
Cecilia Madden, Deputy Chief of Staff

**Larry Krasner, District Attorney**
Three South Penn Square
Philadelphia, PA 19107-3499
(215)-686-8000
www.phillyDA.org

# EXHIBIT 6

Re: Response to Exemption Letter- Rachel Spivack

Cecilia Madden <Cecilia.Madden@Phila.gov>

Mon 4/4/2022 12:29 PM

To: Osha Thomas <osha.thomas@phila.gov>;Rachel Spivack <Rachel.Spivack@phila.gov>
Cc: Mike Lee <Mike.lee@Phila.gov>;Jordan King <Jordan.King@Phila.gov>

Good afternoon, Rachel.

You were notified on March 7th that if you failed to either complete a COVID-19 vaccination schedule or obtain at least one dose of a two part COVID-19 vaccination, by noon on March 18, 2022, you would be placed on Unvaccinated Leave ("U-Vax Leave") beginning on March 21, 2022, and you have therefore been on U-Vax Leave since March 21, 2022.

You were also notified that if you were to exhaust your available accrued leave while on U-Vax Leave, you would be carried in unpaid status, and that any period of unpaid status beyond 15 days would be considered a break in service. We are reaching out now to notify you that your 15th unpaid day will be Thursday, April 7, 2022.

Please let us know if you intend to complete a COVID-19 vaccination schedule or obtain at least one dose of a two part COVID-19 vaccination before that date, or if you intend to submit a letter of resignation before that date. If we do not hear from you, we will have to separate you from service effective April 8, 2022.

Thank you,
Cecilia

**Cecilia Madden**
Deputy Chief of Staff
Office of Philadelphia District Attorney Larry Krasner
3 South Penn Square
Philadelphia, PA 19107
desk: 215-686-8709
cell: 267-283-7178

---

**From:** Osha Thomas <osha.thomas@phila.gov>
**Sent:** Monday, March 7, 2022 5:23 PM
**To:** Rachel Spivack <Rachel.Spivack@phila.gov>
**Cc:** Cecilia Madden <Cecilia.Madden@Phila.gov>; Mike Lee <Mike.lee@Phila.gov>; Jordan King <Jordan.King@Phila.gov>
**Subject:** Response to Exemption Letter- Rachel Spivack

Good Evening,

Please see the attachment for the following documents:

*1. DAO Response to Covid-19 Vaccination Exemption Request*
*2. Separation Notice to DAO Unvaccinated employees*

Kind Regards,

**Osha Thomas**
Coordinator of Recruiting and Hiring
Special Assistant to Deputy Chief of Staff, Cecilia Madden

Office of Philadelphia District Attorney Larry Krasner
3 South Penn Square Philadelphia, PA 19107