## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RACHEL SPIVACK              :
          ***Plaintiff,***       :     **CIVIL ACTION NO.:** 22-1438
                        :
    v.                  :
                        :
CITY OF PHILADELPHIA    :
    and               :
LAWRENCE S. KRASNER   :
          ***Defendants.***    :     Honorable Paul S. Diamond
_____ :     **JURY TRIAL DEMANDED**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER
## <u>AND PRELIMINARY INJUNCTION</u>

Plaintiff, pursuant to Fed. R. Civ. P. 65, moves the Court for a temporary restraining order ("TRO") and preliminary injunction against Defendants' enforcement of the unconscionable, unconstitutional, and unlawful Philadelphia COVID-19 Vaccine Mandate requiring that all employees of the District Attorney's Office ("DAO") receive a COVID-19 vaccine *even where an employee's sincerely held religious beliefs prohibit them from doing so*. The policies and enforcement of the COVID-19 Vaccine Mandate by the Defendants violates the Pennsylvania Religious Freedom Protection Act, 71 Pa. Stat. Ann. §§ 2401–2407, ("PRFPA") and the Free Exercise Clause of the First Amendment of the United States Constitution. Plaintiff incorporates by reference the facts stated in her Verified Complaint filed April 12, 2022 within. In further support therefor, Plaintiff shows the Court as follows:

Dated: May 4, 2022

Respectfully submitted,

SIDNEY L. GOLD & ASSOC., P.C.

By:     /s/ Sidney L. Gold, Esquire
        SIDNEY L. GOLD, ESQUIRE
        I.D. No.:  21374
        1835 Market Street, Suite 515
        Philadelphia, PA 19103
        (215) 569-1999
        **Attorney for Plaintiff**


By:     /s/ Christina Martinez
        Christina Martinez, Esq.
        245 Bricktown Way, Suite J
        Staten Island NY 10309
        T: (347) 215-4543
        F: (718) 556-2007
        ChristinaMartinezEsq@gmail.com

        ***Attorneys for Plaintiff***

# TABLE OF CONTENTS

**Page(s)**

I.   Introduction…………………………………………………………….. 1

II.  Standard for Injunctive Relief …………………………………….......2

III. Argument ……………………………………………………………….. 2

   A. Plaintiff is Likely to Succeed on the Merits of Her PRFPA
      and First Amendment Claims ………………………………………….. 2

       i.   Pennsylvania Religious Freedom Protection Act ...……………... 2

           a. The Defendants' COVID-19 Vaccine Mandate Substantially
             Burdens Plaintiff's Sincerely Held Religious Beliefs and
             Requires Strict Scrutiny Pursuant to PRFPA ………………….2

              1. Free Exercise of Religion: The Plaintiff Has Sincerely Held
                 Religious Objections to the Philadelphia DAO's COVID-19
                 Vaccine Mandate ………………………………………..... 3

              2. The Plaintiff's Religious Exercise is Substantially Burdened
                 by the Defendants' COVID-19 Vaccine Mandate …..……..7

       ii.  The Free Exercise Clause of the First Amendment ………………8

           a. The Defendants' COVID-19 Vaccine Mandate Is Neither
             Neutral Nor Generally Applicable and Therefore Is Subject to
             Strict Scrutiny Under the First Amendment ………………..…8

       iii. The Defendants' COVID-19 Vaccine Mandate Cannot Withstand
          Strict Scrutiny ………………………………….………………..11

           a. The Defendants' COVID-19 Vaccine Mandate is Not
             Supported by a Compelling Interest ……………………….. 12

           b. The Defendants' COVID-19 Vaccine Mandate is Not the Least
             Restrict Means of Furthering its Interest………………….16

B.  Plaintiff Will Suffer Irreparable Injury Without Relief………………..21

C.  There is No Harm to Non-Moving Party if Relief is Granted, Plaintiff Would Be Harmed by Denying Relief, and Granting Relief Would Serve the Public Interest …………………………………………………......23

IV.    Conclusion…………………………………………………………………25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020)……………..…16, 17

*Air Force Officer v. Austin*, No. 5:22-CV-00009-TES,
2022 WL 468799 (M.D. Ga. 2022) ……………...……………...2, 13, 18, 21, 23

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ………………………….…..16, 17, 18

*Austin v. U.S. Navy Seals 1-26 v. Biden*, 595 U. S. __ (2022)……………………20

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) …………………………………23

*Bowen v. Roy*, 476 U.S. 693(1986) …………………………………………………10

*Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009) ……………...……2, 3

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ……………………...……….18

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) ……………..,………17

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*,
17 F.4th 604 (5th Cir. 2021) …………………………………………..……..21

*Burson v. Freeman*, 504 U.S. 191 (1992) ………………………………………..12

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ……………………..21

*Chosen 300 Ministries, Inc. v. City of Philadelphia,* No. CIV.A. 12-3159,
2012 WL 3235317 (E.D. Pa. 2012) ……………………………………….……7

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) ….8, 9, 10, 13

*City of Boerne v. Flores*, 521 US. 507 (1997) …………………………...……..12

*Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595 (W.D. La. 2019) ……...11

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728 (6th Cir. 2021)…21, 25

*Deveaux v. City of Philadelphia*, 75 Pa. D. & C.4th 315 (Com. Pl. 2005 )..8, 15, 22

*Employment Division v. Smith,* 494 U.S. 872 (1990) ………………………….7, 10

*Edenfield v. Fane*, 507 U.S. 761 (1993) …………………………………………13

*Elrod v. Burns*, 427 U.S. 347 (1976) ……………………….………………….22

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
170 F.3d 359 (3d Cir. 1999)……………………………………….…….10, 11

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)……………….…..8, 9, 10

*Gonzales v. O Centro Espírita Beneficente União do Vegetal*,
546 U.S. 418 (2006) …………………………………………………….…..17

*Holt v. Hobbs*, 574 U.S. 352 (2015) ……...………………………………..5, 7, 13

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) ……………………….…..24

*Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121 (3d Cir. 2017) ….……………….24

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) …………………………………………………….…12

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) …………….....………25

*Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB),
2013 WL 6049066 (S.D.N.Y. 2013) ……………..…………………………11

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) ……….21

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
138 S.Ct. 1719 (2018)………………………………………………………………9

*McAllen Grave Brethren Church v. Salazar*, 764 F.3d 465 (5th Cir. 2014)...……13

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) ……………….………………..17

*Navy Seal 1 v. Austin*, 2022 WL 534459 (M.D.Fla. 2022) .………14, 17, 18, 21, 23

*On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901 (W.D. Ky.2020) .....25

*Pileggi v. Aichele*, 843 F. Supp. 2d 584 (E.D. Pa. 2012) ………...………………..2

*Poffenbarger v. Kendall*, No. 3:22-CV-1,
2022 WL 594810 (S.D. Ohio Feb. 28, 2022) ……………………….………..20, 23

*Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) …………………13

*Roman Catholic Diocese of Bklyn v. Cuomo*, 141 S. Ct. 63 (2020) … 12, 22, 23, 25

*Sambrano v. United Airlines, Inc.*, 2022 WL 486610 (5th Cir. 2022) ………...…22

*Sherbert v. Verner,* 374 U.S. 398  (1963) …………………………………………7

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016)…………………………..11

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC,*
No. 17-1390, 2018 WL 395750 (D. Del. 2018) …………………………………24

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ………………………………..8, 12, 21

*Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2022)…2, 10, 22

*Thomas v. Review Bd. of Indiana Employment Security Div.,*
450 U.S. 707 (1981) ………………………………………………………..5, 16

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) ……………….. 12, 13

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 343 (5th Cir. 2022) …...14, 18, 20, 23

**Statutes**

71 Pa. Stat. Ann. § 2403…………………………………………………....7

71 Pa. Stat. Ann. § 2404……………………………………………..…12

**Other Authorities**

*COVID-19 testing sites*, CITY OF PHILADELPHIA…………………………………19

FEMA, *Engagement Guidelines: Jewish Leaders*……………………………...……..6

Gazit, Shlezinger, Perez, Lotan, Peretz, Ben-Tov, Cohen, Muhsen, Chodick, Patalon, *Comparing SARS-CoV-2 natural immunity to vaccine- induced immunity: reinfections versus breakthrough infections*, MEDRXIV…………………………..15

M. Brown, et. al., Morbidity and Mortality Weekly Report (MMWR), *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings – Barnstable County, Massachusetts, July 2021*, CENTERS FOR DISEASE CONTROL & PREVENTION, (August 6, 2021)…18

Morbidity and Mortality Weekly Report, *COVID-19 Vases and Hispitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis – California and New York, May – November 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, January 28, 2022……………………………………………………16

Morbidity and Mortality Weekly Report, *Waning 2-Dose and 3-Dose Effectiveness of mRNA Vaccines Against COVID-19-Associated Emergency Department and Urgeny Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance – VISION Network, 10 States, August 2021-January 2022*, CDC, February 18, 2022……………………………………19

Nick Andrews, Ph.D, et al., *Covid-19 Vaccine Effectiveness against the Omicron Variant*, The New England Journal of Medicine (March 2, 2022)……………16, 20

Nick Vadala, *Where to get a free COVID-19 test in Philadelphia*, THE PHILADELPHIA INQUIRER (December 30, 2021)………………………………..19

*Omicron Variant: What You Need To Know*, CENTERS FOR DISEASE CONTROL AND PREVENTION, updated March 29, 2022……………………………………………15

Pa. Const. art. I, § 3………………………………………………..…………….3

Rabbi Lord Joanathan Sacks, *Seven Principles of Jewish Leadership*, AISH, June 19, 2012……………………………………………………………………………….5

Shreshta, Burket, Nowacki, Terpeluk, and Gordon, *Necessity of COVID-19 vaccination in previously infected individuals*,
Clin Inf Dis. 2022, January 13, 2022 …………………………………………….16

*Stay Up to Date with Your COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL AND PREVENTION, updated March 10, 2022 ………………………………...19

U.S. Const. amend. I………………………………………………..……....8

## I.    Introduction

This case presents a conflict between fundamental constitutional rights and official action driven by bias against religion and a misplaced distrust of religious objections to vaccination. The Plaintiff was an Assistant District Attorney and employee of the City of Philadelphia. She is also an Orthodox Jewish woman who has long-standing, sincerely held religious objections to all vaccination.

The City of Philadelphia's policies generally recognize its duty to offer a reasonable accommodation where an employee has sincerely held religious beliefs that conflict with the City's COVID-19 Vaccine Mandate. However, at the District Attorney's Office ("DAO"), requesting a religious accommodation is an exercise of futility. The Plaintiff's request was denied and she was terminated. Apparently, denial was inevitable. According to Defendant Krasner, all religious accommodations to the COVID-19 Vaccine Mandate will be denied across the board.  While non-religious accommodations are genuinely considered and have been granted for some employees, Defendant Krasner has taken the position that religious accommodations should not exist and therefore has instituted a no-religious-exemption policy within the DAO.

In fact, the entire religious accommodation process was "both illusory and insincere," a façade, where Defendants put forth a process and procedure for employees to apply for religious exemptions but then systematically and routinely

deny every such application. *Air Force Officer v. Austin*, No. 5:22-CV-00009-TES, 2022 WL 468799, at *10 (M.D. Ga. Feb. 15, 2022) (finding RFRA and First Amendment violations for denial of plaintiff's religious accommodation requests where defendants routinely denied almost all religious exemption requests).

## II.    Standard for Injunctive Relief

To obtain a preliminary injunction, plaintiffs must establish: (1) "that they are reasonably likely to prevail eventually in the litigation"; (2) "that they are likely to suffer irreparable injury without relief"; (3) that granting relief would not harm the defendants more than denying relief would harm the plaintiffs; and (4) that "granting relief would serve the public interest." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2022). The standard for a TRO under Federal Rule of Civil Procedure 65 is the same. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). Plaintiff easily satisfies this burden.

## III.    Argument
## A. Plaintiff is Likely to Succeed on the Merits of Her PRFPA and First Amendment Claims
### i.    Pennsylvania Religious Freedom Protection Act
#### a.    The Defendants' COVID-19 Vaccine Mandate Substantially Burdens Plaintiff's Sincerely Held Religious Beliefs and Requires Strict Scrutiny Pursuant to PRFPA

The PRFPA was "enacted in order to provide more protection to the exercise of religious beliefs than that currently afforded by the Free Exercise Clause of the First Amendment to the Federal Constitution." *Brown v. City of Pittsburgh*, 586

F.3d 263, 285 (3d Cir. 2009). The PRFPA prohibits any law from "substantially

burden[ing] a person's free exercise of religion," even if the "burden ... results from

a rule of general applicability," unless the law is both "in furtherance of a

compelling interest" and the "least restrictive means of furthering the compelling

interest." 71 Pa. Stat. Ann. § 2404. The "free exercise of religion" is defined as

"[t]he practice or observance of religion under section 3 of Article I of the

Constitution of Pennsylvania." 71 Pa. Stat. Ann. § 2403. The Pennsylvania

Constitution provides in pertinent part:

> All men have a natural and indefeasible right to worship Almighty God
> according to the dictates of their own consciences; … no human authority
> can, in any case whatever, control or interfere with the rights of conscience
Pa. Const. art. I, § 3.

### 1. Free Exercise of Religion: The Plaintiff Has Sincerely Held Religious Objections to the Defendants' COVID-19 Vaccine Mandate.

The Plaintiff establishes by clear and convincing evidence that refusing

vaccines violates specific tenets of her religious faith, and constitutes an exercise

of religion under the PRFPA. Plaintiff is an Orthodox Jew and active member of

Congregation Ohr Menachem. She strictly adheres to Torah Law and rejects all

vaccines due to her faith. In 2018, Plaintiff was granted a religious exemption from

the University of Pennsylvania for the vaccines required for college attendance. A

true and accurate copy of the college religious exemption is attached hereto as

**Exhibit 1.** She is religiously obligated to take or abstain from many different

actions as her religious practice. For example, Plaintiff holds herself to a higher

level than standard kosher. (Pl.'s Verified Compl., Ex. 3, ¶ 9). She also observes

the Sabbath, during which her religious exercise prohibits her from anything

considered medicinal, including exercise. *Id.* Plaintiff and her husband are

prohibited from receiving a host of medical procedures, such as sterilization,

autopsies, and euthanasia, among others. (Pl.'s Verified Compl., Ex. 3, ¶ 8). At

issue here, is the refusal of vaccination, which is Plaintiff's religious obligation.

The leader of her congregation, Rabbi Yitzchok Chayempour, wrote a

detailed letter on her behalf explaining the various religious tenets that prohibit her

from receiving the COVID-19 vaccine, which she submitted to the Philadelphia

DAO in her request for a religious exemption. In this letter, Rabbi Yitzchok

Chayempour explains that his congregation "categorically opposes this vaccine as

a matter of religious tenet." (Pl.'s Verified Compl., Ex. 2). He verifies that the

Plaintiff's "religious grounds for declining this vaccination are valid and reflect

deep personal commitment to her religious practice." *Id*. The Rabbi explains

several different tenets of their Orthodox Jewish faith that prohibit the Plaintiff

from receiving the COVID-19 vaccine which are not exhaustive. His letter states

that they "are forbidden to use hybridization technologies":

> Modified messenger RNA and recombinant DNA technologies both constitute
> a profound violation of the scriptural prohibitions against forbidden mixtures,
> *isur kil'ayim*: "Thou shalt not let thy cattle gender with a diverse kind; thou
> shalt not sow thy field with two kinds of seed; neither shall there come upon

thee a garment of two kinds of stuff mingled together." Leviticus 19:19. "Thou shalt not sow thy vineyard with two kinds of seed; lest the fullness of the seed which thou hast sown be forfeited together with the increase of the vineyard. Thou shalt not plow with an ox and an ass together. Thou shalt not wear mingled stuff, wool and linen together." Deuteronomy 22:9-11. The Talmud devotes an entire tractate to the concept. Mishna, Masechet Kil'ayim. Intentionally mingling one's own body cells with a foreign, unnatural, or genetically-modified substance – especially one that effectively co-opts one's cells into doing something it was not intended to do by nature – plainly runs afoul of *isur kil'ayim.*

(Pl.'s Verified Compl., Ex. 2, ¶ 2).

Although, not all Orthodox Jewish persons reject vaccination, the PRFPA's guarantees are "not limited to beliefs which are shared by all of the members of a religious sect." *Holt v. Hobbs*, 574 U.S. 352, 353 (2015) *(*quotin*g Thomas v. Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 715–716 (1981)). Judaism has no pope, no high priest, no central authority at all. Each rabbi is the leader of his specific congregation.[1] Rabbis can, and do, dispute with each other a great deal. Current Judaism is fragmented into thousands of distinct organizations and consists of a large spectrum of communities. There are different branches, as well as sects or subgroups, and each group has their own way of defining their followers. In short, there is no single leader of Judaism. In countries like Israel and U.K., there are chief rabbis. The U.S. does not have a chief rabbi. The Chief

---

[1] Aish, *Seven Principles of Jewish Leadership*, Rabbi Lord Jonathan Sacks, Principle 2 https://www.aish.com/jw/s/Seven_Principles_of_Jewish_Leadership.html?mobile=yes ("In Judaism, leadership is an emergent property of multiple roles and perspectives. No one person can lead the Jewish people.")

Rabbinate of Israel have no jurisdiction over American Jews. Judaism is a

decentralized, dispersed, religious organization with no single leader.[2]

The Plaintiff's rabbi is the leader of her spiritual faith and responsible for

guiding her in Jewish law. She would not and could not turn to a rabbi from

another congregation for Torah guidance. She is not bound by any other rabbi's

ruling but her own. According to Orthodox Judaic culture, once a woman marries,

she must seek religious guidance from her husband's rabbi. When Plaintiff married

her husband, Rabbi Yitzchok Chayempour became her rabbi. Moreover, many

sects within Judaism are not nearly as conservative as the Orthodox, and may

permit their members to do things that do not strictly adhere to biblical law. Even

within the Orthodox community itself, there are different layers of observance. The

Plaintiff consults with her rabbi when there is a question regarding Torah Law.

Specifically, she consults with her rabbi regarding medical treatments:

> Many decisions related to modern medical treatment and Jewish law require
> interpretation and extrapolation from ancient sources. As a result, rabbis with
> different approaches to interpreting rabbinic texts may come to different, but
> equally valid, rulings about a course of action. One is required to follow the
> rulings of his or her personal rabbinic authority. This is part of the reason there
> is variability in some aspects of religious practice within the Orthodox
> community. (Pl.'s Verified Complaint, Ex. 3, ¶ 9).

"It is no more appropriate for defendants to 'presume to determine the place

---

[2] "Judaism is non-hierarchical. There is no Chief Rabbi in the United States or in any city within the U.S." FEMA, *Engagement Guidelines: Jewish Leaders*, https://www.fema.gov/sites/default/files/2020-03/fema_faith-communities_jewish-leaders_1.pdf

of a particular belief in a religion' than it would be for [the court] to do

so." *Chosen 300 Ministries, Inc. v. City of Philadelphia,* No. CIV.A. 12-3159,

2012 WL 3235317, at *19 (E.D. Pa. 2012) (quoting *Emp't Div.,* 494 U.S. at 887).

### 2. The Plaintiff's Religious Exercise is Substantially Burdened by the Defendants' COVID-19 Vaccine Mandate

According to the PRFPA, a law "substantially burdens" religious exercise if

it "[c]ompels conduct or expression which violates a specific tenet of a person's

religious faith." 71 Pa. Stat. Ann. § 2403(4). Plaintiff demonstrates by clear and

convincing evidence that her religious exercise is substantially burdened by

Philadelphia's COVID-19 Vaccine Mandate, which in effect allows for no

religious exemptions. It is a substantial burden when a plaintiff is forced "to

choose" between "abandoning one of the precepts of [her] religion" or "forfeiting

benefits." *Sherbert v. Verner,* 374 U.S. 398, 403-04 (1963); *see also Holt*, 135 S.

Ct. at 862-63. Defendants are willing to allow Plaintiff to continue her

employment, but only if she is willing to violate her sincere religious beliefs

regarding vaccination. The City's actions compel her to violate the tenets of her

faith and her form of religious worship. *Chosen 300 Ministries, Inc.,* at *19

(regulation prohibiting distribution of free food in public park substantially

burdened Christian plaintiffs' free exercise of religion because "their sincerely held

religious beliefs mandate that they share food with the homeless where the

homeless are found" and "sharing food with the poor is as much a form of religious worship as is prayer").

The Plaintiff's sincerely held religious beliefs require that she refuse all vaccination. This is as much a part of her religious worship as observing the Sabbath. Defendants' Mandate "imposes a substantial burden upon Plaintiff's free exercise of religion by [] forcing [her] to choose between [her] religion and [her] job." *Deveaux v. City of Philadelphia*, 75 Pa. D. & C.4th 315 (Com. Pl. 2005).

### ii.   The Free Exercise Clause of the First Amendment

"But even in a pandemic, the Constitution cannot be put away and forgotten."
*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020).

The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

### a.   The Defendants' COVID-19 Vaccine Mandate Is Neither Neutral Nor Generally Applicable and Therefore Is Subject to Strict Scrutiny Under the First Amendment

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Because Defendants burdened Plaintiff's religious exercise through policies lacking neutrality and general applicability, Defendants' policy is subject to strict scrutiny under the Free Exercise Clause.

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–532 (1993); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. *Fulton*, 141 S. Ct. at 1877   (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S.Ct. 1719, 1730–1732 (2018); *Lukumi*, 508 U.S. at 533). Defendants have transgressed this neutrality standard by taking the position that religious objections to the COVID-19 vaccine do not entitle employees to exemptions, but non-religious objections do. Moreover, Defendant Krasner has demonstrated hostility to religion and skepticism of the legitimacy of religious objections to vaccination. (Pl.'s Verified Compl., ¶ 22-23). "The Constitution 'commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures'." *Masterpiece Cakeshop*, 138 S. Ct. at 1731. "Those in office must be resolute in resisting importunate demands and must ensure that the sole reasons for imposing the burdens of law and regulation are secular. Legislators may not devise mechanisms, overt or disguised, designed to persecute or oppress a religion or its practices." *Lukumi*, 508 U.S. at 547.

Additionally, the Defendants' Mandate is not generally applicable because it provides for exemptions. "A law is not generally applicable if it 'invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884). "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Smith*, 494 U.S. at 884 (quoting *Bowen v. Roy*, 476 U.S. 693, 708 (1986)); *see also Lukumi*, 508 U.S. at 537 (same). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877. Although the Mandate purports to provide for religious exemptions, in effect it only provides for exemptions for medical reasons and for union represented employees (Pl.'s Verified Compl., ¶ 19-20, and Ex. 5), since all religious exemptions are denied as a matter of policy. (Pl.'s Verified Compl., Ex. 1, 1A, and 1B). "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it "invite[s]" the government to decide which reasons for not complying with the policy are worthy of solicitude, *Smith*, 494 U.S. at 884.

Indeed, discriminatory rejection of a religious exemption while maintaining a medical exemption violates the First Amendment. *Fraternal Order of Police*

*Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999)

(decision to provide medical exemptions while refusing religious exemptions

triggers heightened scrutiny); *See, e.g.*, *Tenafly,* 309 F.3d at 165–66 ("[I]n

situations where government officials exercise discretion in applying a facially

neutral law, so that whether they enforce the law depends on their evaluation of the

reasons underlying a violator's conduct, they contravene the neutrality requirement

if they exempt some secularly motivated conduct but not comparable religiously

motivated conduct."); *Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB),

2013 WL 6049066, at *3 (S.D.N.Y. 2013) (policy that permits medical exemptions

but not religious exemptions is neither neutral nor generally applicable and must be

subject to strict scrutiny); *Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C.

2016) (accommodating plaintiff's religious exercise cannot cause more damage to

compelling interests than medical accommodations already granted); *Cunningham

v. City of Shreveport*, 407 F. Supp. 3d 595, 607 (W.D. La. 2019) (allowing medical

exemptions while precluding religious exemptions removes neutrality and general

applicability). And, the reason for this is simple. Defendants are not permitted to

make value judgments about whether requests for religious exemption should be

treated the same as non-religious requests:

> [T]he medical exemption raises concern because it indicates that the
> Department has made a value judgment that secular [] motivations for wearing
> a beard are important enough to overcome its general interest in uniformity but
> that religious motivations are not. As discussed above, when the government

11

makes a value judgment in favor of secular motivations, but not religious motivations, the government's actions must survive heightened scrutiny. *Fraternal Order of Police*, 170 F.3d at 366.

### iii. The Defendants' COVID-19 Vaccine Mandate Cannot Withstand Strict Scrutiny

Because the Mandate is neither neutral nor generally applicable, and because it constitutes a substantial burden on Plaintiffs' religious beliefs under the PRFPA, it must satisfy strict scrutiny, meaning the restrictions must be narrowly tailored to serve a compelling interest. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); 71 Pa. Stat. Ann. § 2404. "That standard is not watered down; it really means what it says." *Tandon*, 141 S. Ct. at 1298. This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997), which is rarely passed. *Burson v. Freeman*, 504 U.S. 191, 200 (1992). This is not that rare case.

### a. The Defendants' COVID-19 Vaccine Mandate Is Not Supported by a Compelling Interest

Where, as here, First Amendment rights are at issue, "the government must shoulder a *correspondingly heavier burden* and is entitled to *considerably less deference* in its assessment that a predicted harm justifies a particular impingement on First Amendment rights." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added). Because the City's Mandate and the Defendants' effective exclusion of religious exemptions implicate

Plaintiff's First Amendment rights, Defendants "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993). A compelling interest is an interest "of the highest order." *Lukumi*, 508 U.S. at 546. The burden is on "the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 135 S. Ct. at 863.

"Where a regulation already provides an exception from the law for a particular group, the government will have a higher burden in showing that the law . . . furthers a compelling interest." *McAllen Grave Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014). Defendants claim employees with religious exemptions put the workforce at risk, but allowing unvaccinated employees with medical and administrative exemptions to continue in their positions undermines any claim that Defendants' interest is compelling. Regardless of the reason for their unvaccinated status, they all "pose a 'similar hazard'" to Defendants' interest in '[s]temming the spread of COVID-19'." *Air Force Officer*, at 11. Defendants' mandate "cannot be regarded as protecting an interest of the highest order . . .

13

when it leaves appreciable damage to that supposedly vital interest unprohibited."

*Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002).

Defendants claim that vaccination of all employees is the only way to protect the workplace, but the Defendants do not – and cannot – demonstrate how or why they have a compelling interest in the vaccination of *the Plaintiff specifically*. Particularly where other employees are provided exemptions, refusing religious accommodations is unnecessary and based on Defendant Krasner's disfavor of religious objections to vaccination. According to the Defendants, "[t]he DAO's COVID-19 Vaccination Policy is aimed at protecting all of its employees in the workplace, their families and the public, by reducing the likelihood of death and serious illness." (Pl.'s Verified Compl., Ex. 5). But the Defendants missed their mark. A broadly articulated interest in protecting employees from COVID-19 is not a compelling interest, particularly because strict scrutiny demands that the compelling interest be individualized to the Plaintiff. *Navy Seal 1 v. Austin*, 2022 WL 534459, at *17 (M.D.Fla. 2022) ("RFRA demands more" than a "denial on a broadly articulated interest in 'the health and safety of the force').

The DAO relies on the alleged threat to its mission caused by potential staffing shortages, and the "higher likelihood" of unvaccinated employees transmitting COVID-19 to other employees. (Pl.'s Verified Compl., Ex. 5). But the Defendants' recited interests are generalized and the harms merely conjectural.

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 343, 351, 353 (5th Cir. 2022) (held "Navy had *not shown a compelling interest*" in requiring vaccination of the "plaintiffs in particular," who "live and work in close proximity" with shipmates, and participate in "close quarters, hands-on-training," "(1) to reduce the risk that they become seriously ill and jeopardize the success of critical missions and (2) to protect the health of fellow service members"). Defendants refuse to consider less restrictive measures. Meanwhile, they allow union represented employees to forego vaccination, allow medical accommodations, and because the COVID-19 vaccines do not prevent infections from the Omicron variant[3], Defendants cannot even prove there is a "statistically significant" difference between the employees who have complied with the City's Mandate and the Plaintiff. *Deveaux*, 75 Pa. D. & C.4th 315 (City's safety justification was *not compelling* despite City's experts asserting that facial hair would prevent good respirator seal and there were "no less restrictive measures for safe respirator use than to enforce a policy where beards are not allowed…" as well as the City's evidence of guidelines by OSHA, among others, "which forbid the use of respirators with facial hair," noting that "[a]t least one study [had] shown that there [was] no statistically significant difference between the protection factors achieved by the bearded and clean-shaven workers

---

[3] "[A]nyone with Omicron infection, regardless of vaccination status or whether or not they have symptoms, can spread the virus to others". *Omicron Variant: What You Need To Know*, CDC, updated March 29, 2022, accessible at https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html?s_cid=11734:omicron%20vaccine:sem.ga:p:RG:GM:gen:PTN:FY22

[respirators]"). This becomes even more pertinent when considering that Plaintiff recovered from a natural COVID-19 infection, which provides more robust protection than vaccination.[4] This is reflected in a January 28, 2022 CDC report which found that natural immunity against COVID was at least three times as effective as vaccination alone at preventing infection.[5] This is especially the case for individuals who have only received the primary series[6], which is all Defendants require for employees.

### b. The Defendants' COVID-19 Vaccine Mandate Is Not the Least Restrictive Means of Furthering its Interest

"As the Government bears the burden of proof on the ultimate question of [the Mandate's] constitutionality, [Plaintiff] must be deemed likely to prevail unless the Government has shown that [Plaintiff's] proposed less restrictive alternatives are less effective than [the Mandate]." *Ashcroft v. ACLU*, 542 U.S.

---

[4] Gazit, Shlezinger, Perez, Lotan, Peretz, Ben-Tov, Cohen, Muhsen, Chodick, Patalon, *Comparing SARS-CoV-2 natural immunity to vaccine- induced immunity: reinfections versus breakthrough infections*, MEDRXIV, https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1?fbclid=IwAR3sQLWlnAEjg RBQ8d5TyRN92MvKA7t53_okMylP7bOejUKYG69cMNUTQZc (concluding that natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization).
Shreshta, Burket, Nowacki, Terpeluk, and Gordon, *Necessity of COVID-19 vaccination in previously infected individuals*, Clin Inf Dis. 2022, January 13, 2022, accessible at https://doi.org/10.1093/cid/ciac022 (showing individuals exposed to natural COVID-19 infection were ten-times less likely to be reinfected compared with vaccinated individuals without natural infection).
[5] Morbidity and Mortality Weekly Report, *COVID-19 Vases and Hispitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis – California and New York, May – November 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, January 28, 2022, accessible at https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w.
[6] A recent study in the New England Journal of Medicine found that "vaccine effectiveness after two [Pfizer] doses was 65.5% [] at 2 to 4 weeks, dropping to 8.8% [] at 25 or more weeks." Nick Andrews, Ph.D, et al., *Covid-19 Vaccine Effectiveness against the Omicron Variant*, The New England Journal of Medicine (March 2, 2022), https://www.nejm.org/doi/full/10.1056/NEJMoa2119451. Concluding "[p]rimary immunization with two doses of [Pfizer] vaccine provided limited protection against symptomatic disease caused by the omicron variant."

656, 666 (2004). Under this standard, "[n]arrow tailoring requires the government to demonstrate that a policy is the 'least restrictive means' of achieving its objectives." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *Thomas*, 450 U.S. at 718). Showing that the challenged action has "some effect" on achieving a governmental interest is insufficient. *Ashcroft*, 542 U.S. at 666, 124 S.Ct. 2783; *Gonzales v. O Centro*, 546 U.S. 418 (2006). To meet this burden, the Defendants must show it "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen v. Coakley*, 134 S. Ct. 2518, 2539 (2014); *see also Agudath Israel*, 983 F.3d at 633 (same). And Defendants must "show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier'." *Agudath Israel*, 983 F.3d at 633.

The Defendants claim that they would be unable to provide its employees with a safe workplace unless it required all employees to be vaccinated without actually examining less restrictive means. Defendants cannot "rely on magic words" and "must demonstrate, with specific and reliable evidence, that the proposed alternative measures are insufficient to further — to an extent reasonably

similar to vaccination — [a] compelling governmental interest." *Navy Seal 1 v. Austin*, 2022 WL 534459, at *17-18 (M.D.Fla. 2022).  Plaintiff proposes several alternative measures to mitigate the spread of COVID: double masking, testing, social distancing, working remotely, as well as natural antibodies. Defendants allege "[r]easonable potential accommodations do not eliminate the risk that an unvaccinated employee presents." *Id*. But vaccination does not eliminate the risk of the spread of COVID-19 either.[7] See *Navy Seal 1*, 2022 WL 534459, at *18 (rejecting defendant's argument that "no lesser restrictive means exists because other COVID-19 mitigation efforts, such as masking and social distancing 'are not 100 percent effective,'" a statement which the court noted was "equally true of vaccination."); *see also U.S. Navy Seals 1-26*, 27 F.4[th] at 349, n.17 ("noteworthy concerning the comparative efficacy of vaccination is that the USS Milwaukee was 'sidelined' in December 2021 by a COVID-19 outbreak despite having a fully vaccinated crew"). Defendants admit – as they must – that COVID-19 vaccines "do not provide 100% protection against breakthrough infections." (Pl.'s Verified Compl., Ex. 5). The COVID-19 Vaccine Mandate having "some effect" on workplace safety is not sufficient under strict scrutiny. *Ashcroft*, 542 U.S. at 666.

---

[7] C.M. Brown, et. al., Morbidity and Mortality Weekly Report (MMWR), *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings – Barnstable County, Massachusetts, July 2021*, CENTERS FOR DISEASE CONTROL & PREVENTION, (August 6, 2021), accessible at https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (finding approximately three quarters (74%) of cases in a large outbreak occurred in fully vaccinated persons, 79% of vaccinated patients with breakthrough infection were symptomatic, and vaccinated persons with breakthrough cases were similar to those who were unvaccinated).

"[D]efendants haven't shown that vaccination is actually necessary by comparison to alternative measures since the 'curtailment of free exercise must be actually necessary to the solution'." *Air Force Officer v. Austin*, 2022 WL 468799, at *10 (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

The Defendants claim that "[w]eekly testing does not protect against interim contagion between tests and such testing is expensive, unreliable, and an administrative burden."  (Pl.'s Verified Compl., Ex. 5). However, testing is often covered by health insurance and the City has many free COVID-19 testing sites.[8] Moreover, vaccination does not prevent contagion either.[9] A vaccinated employee can actually be more of a risk because they are not required to test.  Since the vaccines have waning efficacy,[10] it is unlikely that many of the "vaccinated"[11] employees are even still protected from the original series of the COVID-19 vaccine. The DAO relies on a generalized assessment, the increased likelihood of transmitting COVID-19 to co-workers, the risk of quarantine, and the risk of

---

[8] Nick Vadala, *Where to get a free COVID-19 test in Philadelphia*, THE PHILADELPHIA INQUIRER (December 30, 2021), https://www.inquirer.com/philly-tips/philadelphia-covid-test-free.html. *See also*, *COVID-19 testing sites*, CITY OF PHILADELPHIA, https://www.phila.gov/covid-testing-sites/#/ (last visited April 5, 2022).

[9] *See* Footnotes 3 and 7.

[10] In a recent CDC study, scientists found "[d]uring the Omicron-predominant period, VE [(vaccine efficiency)] against COVID-19–associated ED/UC [(emergency department/urgent care)] encounters was lower overall compared with that during the Delta-predominant period and waned after the second dose, from 69% within 2 months of vaccination to 37% at ≥5 months after vaccination (p<0.001)." Morbidity and Mortality Weekly Report, *Waning 2-Dose and 3-Dose Effectiveness of mRNA Vaccines Against COVID-19-Associated Emergency Department and Urgeny Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance – VISION Network, 10 States, August 2021-January 2022*, CDC, February 18, 2022, available at https://www.cdc.gov/mmwr/volumes/71/wr/mm7107e2.htm .

[11] The CDC requires a booster dose for adults over the age 18 for all three available brands of COVID-19 vaccine. *Stay Up to Date with Your COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL AND PREVENTION, updated March 10, 2022 (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to date.html?s_cid=11747:what%20does%20fully%20vaccinated%20mean:sem.ga:p:RG:GM:gen:PTN:FY22).

staffing shortages, to support their finding that Plaintiff must be vaccinated or else lose her job. However, when the vaccine effectiveness of the primary dose is considered on the prevention of transmission, the Defendants' argument that it is impossible to accommodate the Plaintiff further deteriorates right along with the vaccine induced protection of its employees. A recent study in the New England Journal of Medicine found that "vaccine effectiveness after two [Pfizer] doses was 65.5% [] at 2 to 4 weeks, dropping to 8.8% [] at 25 or more weeks."[12]

Defendants' allowing exemptions demonstrates mandatory vaccination is not the least restrictive means of serving their interest. *Poffenbarger v. Kendall*, No. 3:22-CV-1, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022) (defendant did not meet least-restrictive-means tests where "less restrictive means of furthering [defendant's] interests are being provided (even if only on a 'temporary' basis) on non-religious grounds"); *U.S. Navy Seals 1-26*, 27 F.4th 336[13] (Navy granting medical exemptions was "salient fact" that "further undermined" "Navy's alleged compelling interest," rendering "vaccine requirements underinclusive," and "no reason is given for differentiating those service members from Plaintiffs", whose religious exemptions were denied). Put simply, "restrictions inexplicably applied to one group and exempted from another do little to further [the government's] goals

---

[12] *See* Footnote 6.

[13] The Supreme Court of the United States has issued a partial stay only as far as the district court's order precluded the "Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions" in deference to the military. *Austin v. U.S. Navy Seals 1-26 v. Biden*, 595 U. S. ___ (2022).

and do much to burden religious freedom." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020). As the Supreme Court said in *Tandon*,

> narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

141 S. Ct. at 1296–97.

Furthermore, the Defendants failed to engage in any *individualized* assessment of the Plaintiff's request for an accommodation. *Navy Seal 1 v. Austin*, 2022 WL 534459, at *15 ("dismissive generalization and recitation of policies and aspirations" are insufficient under RFRA when reviewing religious exemption request to COVID-19 vaccine mandate). Nor did they explain why the mitigation strategies that Plaintiff used during the height of the pandemic are no longer acceptable. *Air Force Officer*, at *10 (ridiculing defendant for arguing previously permissible mitigation measures no longer acceptable). Pursuant to the RFRA, the government must "demonstrate that the compelling interest test is satisfied through application of the challenged policy 'to the person' – the particular claimant whose sincere exercise of religion is being substantially burdened." *Air Force Officer*, 2022 WL 468799, at *10 (quoting *Hobby Lobby*, 573 U.S. 682, 726 (2014)).

**B. Plaintiff Will Suffer Irreparable Injury Without Relief**

Putting "reluctant individual recipients" "to a choice between their job(s) and their jab(s)" constitutes irreparable harm. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.,* 17 F.4th 604, 618 (5th Cir. 2021); *see also Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728, 736 (6th Cir. 2021) (finding irreparable injury in deprivation of First Amendment rights for college student athletes denied requests for religious exemptions). The harm Plaintiff faces flows from the Defendants' coercing her into violating her religious convictions. *See Tenafly,* 309 F.3d 144 (Limitations on the free exercise of religion inflict irreparable injury); *Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *3 (5th Cir. 2022) (plaintiffs placed on unpaid leave after denial of their religious exemptions to employer's COVID-19 vaccine mandate, suffered irreparable injury by "being subjected to ongoing coercion based on their religious beliefs", and "[t]hat coercion is harmful in and of itself and cannot be remedied after the fact").

It is well-settled, acknowledged by SCOTUS all the way down to the district courts, that the "choice" between violating religious beliefs and complying with COVID-19 mandates, constitutes irreparable injury. As SCOTUS has affirmed, "there can be no question that the challenged restrictions, if enforced, will cause irreparable harm. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury'." *Catholic Diocese*, 141 S. Ct. at 67 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Mandate

"imposes a substantial burden upon Plaintiff's free exercise of religion by, *inter alia,* forcing [her] to choose between [her] religion and [her] job." *Deveaux*, 75 Pa. D. & C.4th 315. Plaintiff would suffer immediate and irreparable harm that cannot be compensated by money damages if this injunction did not issue. *Id.* And federal courts adjudicating claims pursuant to the Free Exercise Clause and the RFRA, "correctly recognize, the 'substantial pressure' on a religiously objecting [employee] to obey the COVID-19 vaccination order and violate a sincerely held religious belief constitutes an irreparable injury redressable by a preliminary injunction." *U.S. Navy Seals 1-26*, 27 F.4th at 348; *See also Navy Seal 1 v. Austin,* No. 8:21-CV-2429-SDM-TGW; *Air Force Officer v. Austin*, 5:22-cv-0009-TES; *Poffenbarger*, No. 3:22-CV-1.

### C. There is No Harm to Non-Moving Party if Relief is Granted, Plaintiff Would Be Harmed by Denying Relief, and Granting Relief Would Serve the Public Interest

When Defendants impose a mandatory vaccine upon Plaintiffs and purport to strip such individuals of their abilities to receive (or even request) exemption and accommodation for the exercise of their sincerely held religious beliefs, courts "have a duty to conduct a serious examination of the need for such a drastic measure." *Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id.* Nor could Defendants make such a showing, as Plaintiff is merely seeking to continue her employment as

an Assistant District Attorney, the same way she has for months.  And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). This Court assesses the balance of harms by comparing "the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three)." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015); *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (same). Harms that are "tenuous at best, and *entirely* hypothetical" will therefore not suffice to defeat a preliminary injunction motion. *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390, 2018 WL 395750, at *6 (D. Del. 2018).

Plaintiff will suffer serious and immediate harms absent a preliminary injunction. But the Defendants' alleged harms are all purely hypothetical. Defendants do not point to any proof that providing the Plaintiff with a reasonable accommodation will create the dangerous condition they allege. They do not claim that an unvaccinated employee has ever spread COVID-19 in the workplace causing a staffing shortage that they contemplate. They do not explain why vaccination of the Plaintiff is the only way to provide a safe workplace. There is no actual harm to Defendants by accommodating the Plaintiff's sincerely held religious beliefs in the same manner they accommodate medical conditions.  The City's purported reasons for denying Plaintiff's religious exemption are based on

*hypothetical* harms. Defendants cannot demonstrate that the Plaintiff, surrounded by a nearly completely vaccinated workplace, can cause the harm that they allege. Especially when taking into consideration the Plaintiff's recovery from natural infection and the other less restrictive mitigation strategies that can be utilized, such as masking, testing, and social distancing.

Moreover, Defendants are "in no way harmed by the issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011). Conversely, for Plaintiff, even minimal infringements upon First Amendment values constitute irreparable injury. *Catholic Diocese*, 141 S. Ct. at 67. Indeed, "[p]roper application of the Constitution . . . serves the public interest [because] it is always in the public interest to prevent a violation of a party's constitutional rights." *Dahl*, 15 F.4th at 736. Absent injunctive relief, Plaintiff faces "an impossible choice: [accept a vaccine] in violation of [her] sincere religious beliefs, or [face termination] for practicing those sincere religious beliefs." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 914 (W.D. Ky. 2020).

## IV.   Conclusion

A person's practice of sincerely held religious beliefs can coexist with the City's interest in stemming the spread of COVID-19. But when these competing interests collide, it falls upon the courts to determine where the balance between

legitimate government interests and guaranteed religious freedom rests. It is clear that the Plaintiff is entitled to a preliminary injunction, and respectfully, the Court should issue one posthaste.

<div style="margin-left:40%;">

Respectfully submitted,

SIDNEY L. GOLD & ASSOC., P.C.

By:   /s/ Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. No.:  21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff**


By:   /s/ Christina Martinez
Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
F: (718) 556-2007
ChristinaMartinezEsq@gmail.com

*Attorneys for Plaintiff*

</div>