IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL SPIVACK,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 2:22-cv-01438 |

**DECLARATION OF LAWRENCE S. KRASNER, ESQUIRE**

I, Lawrence S. Krasner, Esquire, hereby affirm the following to be true and correct based on my personal knowledge and investigation:

1. I have served as the duly elected District Attorney of Philadelphia since January 2018.

2. A primary purpose of the District Attorney's Office ("DAO") is to prevent future harm to people and to advance public safety.

3. As an independent elected official, the District Attorney has the power to hire, fire, set policy and discipline for all employees who are not subject to a union contract. This group of employees comprises roughly 90% of all DAO employees, including all assistant district attorneys. Therefore, the DAO is not a city agency and may determine different policies than the city for this universe of employees subject to the District Attorney's decision making.

4. As I write this declaration, the Covid-19 ("Covid") pandemic has claimed over 1 million American lives and 15 million lives around the world, in addition to seriously harming

countless others permanently in some cases and in ways that eventually remediate in others. Without question, it is the worst and most fatal pandemic in over a century.

5. As I write this declaration, Covid has disrupted government, including law enforcement, and the private economy in unprecedented ways. Among many other disastrous consequences, Covid has disrupted criminal justice partners' normal access to courts to prosecute and to resolve criminal matters in sweeping and unprecedented ways.

6. Since March 2020, the Covid pandemic has significantly disrupted the operations of the DAO in and out of court. As a consequence, the DAO has faced unprecedented challenges maintaining its operations necessary to fulfill its constitutional responsibilities in the criminal justice system. Those obligations require extensive activity in and out of the office, including activity in courtrooms that must be in person as well as many other forms of work that cannot be done remotely. Those obligations, in an office of more than 600 employees, require extensive and frequent activity in very highly populated environments, where our employees are proximate to people who are at risk of suffering death or other terrible harm from COVID and simultaneously present the risk of a safety threat to others by their potential to spread the virus.

7. Although the DAO's office remained open at all times during the pandemic due to the essential nature of the DAO's work, most of the DAO's approximately 300 assistant district attorneys and the non-union DAO employees worked remotely from March 2020 until the vaccine became widely available in spring 2021.

8. Having assistant district attorneys working remotely is not conducive to the unusual and specific requirements of DAO operations, as it inhibits staffing and prosecuting cases that involve the constant use of paper files in and out of court, collaboration and training,

all of which are essential to the proper functioning of the DAO. Accordingly, once the assistant district attorneys had an opportunity to become vaccinated, I brought them back to the office.

9. Among the approximately 300 attorneys who work in the DAO as assistant district attorneys and the non-union DAO employees, some are over 65 and therefore regarded as at greater risk of serious harm if they contract Covid; some are parents of children too young to be vaccinated against Covid; some are or live with individuals who have weakened immune systems (common among those being treated for cancer, and common for other diseases) and are at greater risk of serious harm if they contract Covid; and some live with or care for elderly relatives, who are at greater risk of serious harm if they contract Covid. DAO employees are required to reside within Philadelphia. All of them live in urban, densely populated communities where the possibility of contracting or spreading the virus is heightened as compared to less populated communities.

10. Over the course of this unprecedented, constantly mutating, and unpredictable pandemic, the DAO's policies and practices to limit the risk of spreading Covid have changed as infection rates and severity have spiked and dipped, and as medical opportunities to increase everyone's safety have become available. The DAO's Covid policies for vaccination, masking, reporting requirements, procedures regarding exhibition of Covid symptoms, quarantining, and procedures for positive testing have evolved as information on safety protocols have changed over the past two years, and continue to change even now.

11. In August 2021, and in connection with returning to the office, I implemented a generally applicable vaccine mandate for the universe of DAO employees subject to my discretionary decision making, who are not covered by a union contract because, based on leading health experts' and leading health agencies' recommendations, I determined that a

vaccine mandate would be the most effective way to protect the DAO workforce and their families and their communities and other participants of the criminal justice system from Covid. This decision was the result of extensive consideration with executive staff, who zealously argued safety required it and unanimously supported it.

12. The DAO's vaccine mandate is critical for the entire criminal justice system, including the DAO, to return to full-capacity in order to best serve the City of Philadelphia. The DAO's vaccine mandate is also critical for the DAO to protect its employees, its employees' families, their communities, victims, witnesses, the judiciary, police, court staff, jurors and DAO visitors.

13. Masking and testing, individually or together are not acceptable substitutes for vaccination in the DAO. Masking is not an acceptable substitute because it is not feasible to prevent persons from using masks that are or have become insufficient, or are not worn correctly (tight fit and covering nose and mouth) or at all. Testing is not an acceptable substitute because it does not disclose that a person has been exposed and presents a risk to others, but the virus has not yet been detected, nor is it constant.

14. The DAO's vaccine mandate policy, as originally formulated, permitted assistant district attorneys to request an exemption for religious or medical reasons no later than September 1, 2021.

15. In early December 2021, the DAO requested each employee seeking an exemption from the vaccine mandate to complete an application in support of his or her request by December 22, 2021.

16. However, in late December and January 2021, the Covid omicron variant caused a significant surge in virus cases nationwide. That surge caused me to rethink the possibility of

allowing exemptions. I concluded that allowing exemptions would create unacceptable risks, not only to the other DAO employees and their families and communities, but also to the many others in the criminal justice system with whom they come in contact.

17. Accordingly, I decided not to allow any exemptions unless an applicant for a medical exemption demonstrated that the vaccine presented a verified risk of serious illness or death to that employee. One application satisfied that requirement. That one applicant was suffering from a serious illness and provided evidence that the Covid vaccination might worsen her condition or kill her by increasing rather than reducing her risk of harm. I am confident that this one individual will be scrupulous in adhering to the letter and the spirit of a masking and testing requirement for the safety of herself and others.

18. I denied all other DAO non-union employees' requests for exemptions from the vaccine mandate, including Rachel Spivack's request for a religious exemption.

19. Although the City of Philadelphia's vaccine mandate for civil service and police department employees allows religious or medical exemptions for employees of agencies under its control or subject to city union contracts, I set a more restrictive standard for vaccination of the non-union DAO employees for whom I am responsible, due to the unique nature of the DAO's work, which requires many of its employees to work indoor and interface with the public on a regular basis and also requires the constant use and transfer of paper files in ways that are different than other private and governmental entities.

I hereby state that the facts above set forth are true and correct to the best of my knowledge, information and belief. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

_____
Lawrence Krasner

Date: May 13, 2022