IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHAEL SPIVACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2:22-cv-01438 |
| | ) | |
| CITY OF PHILADELPHIA, LAWRENCE S. | ) | |
| KRASNER, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF PHILADELPHIA'S MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, City of Philadelphia (hereinafter, the "City") by and through counsel, hereby

moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 to dismiss Plaintiff's

Complaint with prejudice and states as follows:

I.     **INTRODUCTION**

This case is about Plaintiff's constitutional and statutory challenge to the District

Attorney's Office's (hereinafter "DAO") COVID-19 vaccine mandate policy (the "DAO Vaccine

Policy") after District Attorney Lawrence Krasner's ("Krasner") denied Plaintiff's religious

exemption request ("Plaintiff's Request" or "Request"). Despite that this case is solely between

Plaintiff and Krasner—Plaintiff makes claims of wrongdoing against the City in the face of the

obvious: the City should not be a party to this lawsuit because it played no role in Plaintiff's alleged

harm. For these reasons, summary judgment should be granted in favor of the City and against

Plaintiff on all claims.[1]

---

[1]     This Motion addresses threshold issues with respect to Plaintiff's First Amendment and statutory
claims. Should the City remain a Defendant, it does not waive its right to substantively challenge Plaintiff's
ability plead a *prima facie* case under both counts. If this Court were to find that the City Vaccine Policy
somehow harmed Plaintiff and must be assessed under the constitutional and statutory frameworks, the
City's position remains that the City Vaccine Policy is a neutral policy, strict scrutiny is not warranted, and

As a matter of law, Plaintiff cannot demonstrate that the City or any City policy or custom caused her harm. This is fatal to her constitutional and state claims—both of which mandate Plaintiff to prove a threshold causation element between her alleged harm and the challenged conduct. Despite broad allegations in the Complaint against the City, Plaintiff herself points only to the DAO Vaccine Policy and the decisions, actions and inactions made by the DAO regarding her Request. This is the reality of the case. Though the City is Plaintiff's employer according to her W-2, Krasner has maintained that he had the sole discretion to control the terms and conditions of her employment because she was an exempt and non-represented employee. Thus, Krasner's DAO Vaccine Policy applied to Plaintiff, and Krasner testified that he alone denied her Request under his own policy. This is undisputed by Plaintiff. It is these actions—Krasner and the DAO's actions—which Plaintiff claims caused her injuries and allegedly deprived her of protected religious freedoms, not any action by the City.

The City does not even own a link on the causal chain for the alleged claim and injury. The City did not promulgate or implement the DAO Vaccine Policy. The City did not apply the DAO Vaccine Policy, and it did not review or determine Plaintiff's Request under the DAO Vaccine Policy. Therefore, it is undisputed that Plaintiff's alleged injuries have no nexus to the City. Thus, Plaintiff's First Amendment claim fails for two independent reasons: (1) Plaintiff cannot demonstrate municipal liability under Section 1983 because there is no City policy that caused any alleged constitutional deprivation; and (2) Plaintiff lacks standing because her alleged harm is not "fairly traceable" to any City conduct.

Additionally, Plaintiff's state claim under the Pennsylvania Religious Freedom Protection Act (the "PRFPA") is procedurally flawed for failure to provide pre-suit notice and is similarly

---

the City Vaccine Policy was rationally related to a legitimate government interest.

defective for lack of causation. Under the PRFPA, Plaintiff was required to provide the City with notice prior to filing her lawsuit under 71 P.S. § 2405(b). She failed to do so and claims she may bring her action under an exception because the harm was "imminent" under 71 P.S. § 2405(c)(1). *See* Compl. at ¶ 44. However, Plaintiff filed this lawsuit *after* she was terminated. As such, notice was required and her claim should be dismissed with prejudice. Additionally, for the same reason her constitutional claim fails, so too does her PRFRA claim. Again, Plaintiff cannot show that the City took any action or inaction that allegedly substantially burdened her religious freedoms.

With no viable claim against the City, Plaintiff may attempt to manufacture a theory liability to impute the City by claiming that, as Plaintiff's employer, the City is a necessary party and is responsible for her harm. Under 53 P.S. § 16257, when a City department is sued, the City must be a named defendant. However, under *Sourvelis v. City of Philadelphia*, the Philadelphia DAO is not a "department" of the City under the statute, and therefore the DAO and the District Attorney may be sued in its/his official capacity without mandating the City as a Defendant. 103 F. Supp. 3d 694, 710 (E.D. Pa. 2015) (Robreno, J.).

For these reasons, this Honorable Court should grant summary judgment in favor of the City and dismiss Plaintiff's claims against it with prejudice.

## II.    RELEVANT FACTS

### A.    District Attorney Krasner's Authority as an Independently Elected Official

The City of Philadelphia[2] is a municipal government established by the Philadelphia Home Rule Charter. As the name implies, independently elected offices ("IEO's") are the offices of City officials who are independently elected by the citizens of Philadelphia and not appointed by the

---

[2]    The "City" as defined herein does not refer to or include Krasner, or any DAO staff, personnel or employees. Rather, the "City" only refers to the City of Philadelphia administration, including but not limited to, the Department of Labor and the Employee Relations Unit ("ERU").

Mayor of Philadelphia—such as the Sheriff's Office, the Register of Wills, the City Controller's Office and the District Attorney's Office.

As an independently elected official, Krasner exercised certain discretionary authority over employment policies and protocol in the DAO that at times may be similar or different to policies imposed by the City. *See e.g.*, Ex. A, Listenbee Dep. at 35:3-9; 54:16-24. As Krasner testified, he understood his options to be, either adopt a given City policy as his own, or instead promulgate a separate policy that may vary or differ from the City. Ex. B, Krasner Dep. at 10:8-11:5; 112:19-115:24. For example, when the City issued a mask-mandate policy, Krasner chose to also adopt and apply that policy as his own. Ex. B, Krasner Dep. at 75:23-77:7; Ex. C, Madden Dep. at 31:11-34:4.

However, Krasner's authority is nuanced in application because IEO's can house both: (1) represented employees (i.e., union employees), whose terms and conditions of employment are controlled by a collective bargaining agreement or arbitration proceedings; and (2) exempt and non-represented employees (like Plaintiff) who are not part of bargaining units and can be subject to the IEO's mandated terms and conditions of employment. *See e.g.*, Ex. C, Madden Dep. at 102:1-15; *see also* Ex. D, Pl.'s Employment Offer. For example, union law enforcement and civil service members work in the DAO. Ex. A, Listenbee Dep. at 62:17-63:8.

Against this backdrop, Krasner understood his policies and procedures to apply and control the employment conditions for exempt and non-represented employees: "The city's policies, in conjunction with the union contracts for the employees whose compensation, hiring/firing, discipline, I do not control[;] those things together apply to the small portion of my employees who are union". . ."I have the ability to hire and to fire my employees, the City does not, as long as they are nonunion." Ex. B, Krasner Dep. at 10:8-11:5; *see also* 84:24-85:6. Though the City is

ultimately Plaintiff's employer, as a non-represented employee of the DAO, the terms and conditions of employment were set by Krasner and the DAO. Ex. E, Pl.'s Acceptance of Offer (describing Plaintiff's employment and its terms, including unit assignment, transfer, residency and termination).

**B.     The City Vaccine Policy**

On August 11, 2021, the City announced its first iteration of its COVID-19 vaccine mandate (the "City Vaccine Policy").[3] Ex. F, City Vaccine Policy and Amended Announcements. The City Vaccine Policy mandated vaccination compliance for all City workers, and provided for medical, disability and religious exemptions. *Id*. The ERU was designated to handle the exemption requests, and it developed its own process, information intake forms, and review system. Ex. G, City Forms.

The City Vaccine Policy applies to union employees by virtue of interest arbitration awards.[4] Ex. H, Arbitration Awards and Stipulations. Because some union employees work in the DAO, those employees are subject to the City Vaccine Policy and were directed to follow City guidelines to submit exemption requests to the ERU consistent with the City process. Ex. G, City Forms. Again, this delineation of authority exists because although Krasner maintains that he has certain discretion as an independently elected official, he is also bound to observe the terms of the union contracts between the City and union employees. In Krasner's own words, "the specifics around Covid for unionized employees who work in the DA's office…I don't determine that[;] I

---

[3]     The City Vaccine Policy was revised on occasion to account for changed compliance deadlines and implementing an exemption appeal process. *See* Ex. F, City Vaccine Policy and Amended Announcements, at p. 13-18.

[4]     The City's municipal unions challenged the City Vaccine Policy's application through arbitration. Ultimately, the City Vaccine Policy and its application to union employees was handled through the interest arbitration process and private agreement.

don't have control." Ex. B, Krasner Dep. at 72:25-77:7; 220:19-221:2; 225:21-226:14. Therefore, the DAO could not control or make a final determination on exemptions requests submitted to the City by union employees who work in the DAO. *Id*.

This practice was understood and honored by the DAO. For example, Krasner understood that the DAO could not make a final determination on union employees' requests for exemptions and/or accommodations. Ex. B, Krasner Dep. at 225:21-226:14; Ex. A, Listenbee Dep. at 112:2-25 (explaining that the City Vaccine Policy applies to union employees who work in the DAO); Ex. C, Madden Dep. at 100:1-103:19; 127:20-128:5.

## C.     District Attorney Krasner's Vaccine Policy

Consistent with his understanding of his authority as an independently elected official, Krasner chose not to adopt the City Vaccine Policy for the DAO, but to craft its own. Ex. B, Krasner Dep. at 114:5-22; Ex. C, Madden Dep. at 43:4-7. His decision to implement the DAO Vaccine Policy was a separate and independent effort and was not contingent on any City policy or procedure. Ex. B, Krasner Dep. at 114:21-115:24; Ex. A, Listenbee Dep. at 30:11-31:10; 116:9-117:5; Ex. C, Madden Dep. at 33:12-34:4. In fact, Robert Listenbee, First Assistant for the DAO, confirmed at his deposition that no City personnel were present or involved in any DAO meetings to develop the DAO Vaccine Policy. Ex. A, Listenbee Dep. at 116:9-117:5. Rather, the DAO conducted its own siloed effort by researching the public health guidance from the City Health Department, the State Department of Public Health and the Centers for Disease Control and Prevention. Ex. C, Madden Dep. at 13:11-14:25; 35:22-36:6. The DAO drafted its policy before the City even announced its own, and the DAO Vaccine Policy was approved by Krasner and directly implemented in the DAO. Ex. C, Madden Dep. at 43:4-46:18. The DAO Vaccine Policy was not considered a "city policy" by the DAO. Ex. C, Madden Dep. at 47:9-19.

The DAO Vaccine Policy mandated vaccine compliance by September 1, 2021, and set forth independent guidelines for the exempt and non-represented DAO employees. Ex. C, Madden Dep. at 48:3-49:6. For a time, the DAO Vaccine Policy also offered exemptions for medical reasons, religious beliefs, or disability accommodations. Ex. I, DAO Vaccine Policy, at 8-9. As to the exemptions, the DAO established its own application process—the employee would fill out a DAO-created form and was directed to coordinate with Cecilia Madden, the Deputy Chief of Staff at the DAO. Ex. C, Madden Dep. at 6:11-15; 61:20-63:9; 69:20-23; Ex. B, Krasner Dep. at 153:2-154:9. Madden handled all of the exempt and non-represented DAO employee religious exemption requests because as Krasner and the DAO understood it: "we were the appointing authority and [Krasner] is an independently elected official with the discretion to respond to exemptions according to his own process.". Ex. C, Madden Dep. at 88:25-89:19.

The DAO also made this process clear to DAO represented employees like Plaintiff:

Q: How did DAO employees know whether they should be submitted to the City or to the DAO?

**A: I think that our mandate when we rolled it out was pretty clear that we wanted our exempt employees to make those requests of us. So, I think, when employees read that, they knew that they needed to submit information to us.**

Ex. C, Madden Dep. at 98:8-16; 137:19-139:5. Thus, the DAO instructed exempt and non-represented DAO employees like Plaintiff that they were subject to the DAO Vaccine Policy and should apply for an exemption by following the DAO application process. Ex. C, Madden Dep. at 137:19-139:5.

Though exempt and non-represented DAO employees could apply for a religious exemption request using this process, Krasner ultimately determined that the law did not require the DAO to grant religious exemption requests. Ex. B, Krasner Dep. at 127:9-128:11; Ex. A, Listenbee Dep. at 35:10-38:20; Ex. C, Madden Dep. at 51:4-14. On this basis, the DAO denied all

religious exemption requests by exempt and non-represented DAO employees—including Plaintiff's Request. Ex. B, Krasner Dep. at 157:5-8; Ex. C, Madden Dep. at 67:18-21.

### D. Plaintiff's Request was Solely Reviewed and Determined by District Attorney Krasner under the District Attorney Office's Vaccine Policy

On September 3, 2021, the DAO informed Plaintiff of the DAO Vaccine Policy, mandating vaccine compliance as a condition of employment. Ex. J, Sept. 3, 2021 Email from Thomas to Plaintiff.[5] Per the DAO Vaccine Policy, Plaintiff was instructed to coordinate with the DAO to apply for any exemption. *Id*. at 8. Plaintiff informed the DAO that she would be seeking a religious exemption and provided a supporting letter from her Rabbi. Ex. K, Letter from Rabbi. On December 8, 2022, Plaintiff was instructed, "per the DAO COVID-19 Vaccination Policy," to submit her Request to Madden using the DAO form. Ex. L, Dec. 8, 2021 Email from Madden. Nowhere in this communication was Plaintiff instructed to consult the City Policy or to communicate with the ERU. Rather, Plaintiff was instructed to direct any questions to Madden pursuant to the DAO Vaccine Policy. *Id*.; Ex. C, Madden Dep. at 145:18-146:6.

Plaintiff eventually completed the DAO form seeking a religious exemption under the DAO Vaccine Policy. Ex. M, Pl.'s Exemption Request. The form explains that Plaintiff's Request was reviewed under the DAO Vaccine Policy in order "for the DAO to determine whether [Plaintiff's Request] satisfies legal requirements." *Id*. at 1. The form makes no reference to the City, and the City had no role in preparing the DAO form or reviewing any religious exemption requests pursuant to the DAO Vaccine Policy. *Id*.; Ex. C, Madden Dep. at 69:20-23; Ex. B, Krasner Dep. at 114:5-115:24; Ex. A, Listenbee Dep. at 30:11-24; 116:9-117:5.

---

[5]     Plaintiff's DAO email does not appear on the recipient email chain, however she testified that she received this email and its attachments. Ex. N, Pl. Dep. at 84:2-13.

Plaintiff's Request was submitted to the DAO, reviewed for completion by Madden, and later substantively reviewed and denied by Krasner. Ex. B, Krasner Dep. at 157:5-8; Ex. A, Listenbee Dep. at 87:19-21. In deposition, Krasner explained that it was within his discretion to deny Plaintiff's Request, and he alone denied it. Ex. B, Krasner Dep. at 157:5-8; Ex. C, Madden Dep. at 67:18-21; 73:7-9.

Krasner's determination regarding the Request was later communicated to Plaintiff by DAO personnel. Ex. N, Pl. Dep. at 142:13-20. Specifically, on March 4, 2022, Plaintiff attended an in-person meeting and she was told her Request was denied. *Id.* at 213:1-21. No one from the City was part of that meeting and no one from the City took part in any discussions related to Plaintiff's Request or denial. *Id*. at 213:1-214:18; Ex. A, Listenbee Dep. at 116:9-117:21. Nor was the City involved in any conversations or meetings that followed. Ex. N, Pl. Dep. at 150:2-24; 155:18-158:15. Finally, any communication related to Plaintiff's involuntary leave and ultimate termination came from the DAO and not the City. Ex. O, Pl. RFA No. 16-17. The City was not involved with Plaintiff's Request at any stage:

> Q. … Are you aware of any facts that show the City was involved in deciding whether to grant or deny the plaintiff's religious exemption request?
>
> **A. No.**
>
> Q. Are you aware of any fact that anyone outside of the DAO was involved in deciding whether to grant or deny plaintiff's religious exemption request?
>
> **A. No.**

Ex. C, Madden Dep. at 148:7-17; *see also* 145:3-148:6.

### E.      Plaintiff Admits that the City has no Nexus to the Challenged Conduct

Plaintiff's testimony and responses to the City's Requests for Admissions confirm that the City played no role in the challenged conduct. First, Plaintiff admits she never communicated to anyone within the City about her Request or the denial of her Request. Ex. O, Pl. RFA No. 8, 15,

18-20. She further agreed that she was never instructed to consult the City Vaccine Policy; she never received the City Vaccine Policy from the DAO; nor was she ever directed to communicate with the ERU. Ex. N, Pl. Dep. at 210:3-212:4. Rather, Plaintiff agrees that the DAO specifically instructed her to follow the protocol set out in the DAO Vaccine Policy and directed her to submit her Request to the DAO. Ex. N, Pl. Dep. at 211:4-8. Plaintiff also admits that she never read, reviewed or completed the City's religious exemption form, nor did she ever communicate with the ERU. Ex. N, Pl. Dep. at 209:17-210:13. Plaintiff further admits that she was never instructed by any DAO personnel to communicate or send any relevant information to any person outside of the DAO, nor did she. She never sent her Rabbi's letter in support of her Request to the City. Ex. N, Pl. Dep. at 210:14-18. She never sent her Request form to the City. Ex. N, Pl. Dep. at 210:14-211:8. Ultimately, Plaintiff admits the City was not involved in denying her Request:

> Q: Are you aware of any facts that the City made any determination regarding your religious exemption request?
>
> **A: I am not.**
>
> *     *     *
>
> Q: Do you have any reason to believe that anyone other than the district attorney's office took any action or inaction with regard to your religious exemption request?
>
> **A: No.**

Ex. N, Pl. Dep. at 218:21-219:1.

### F.    Plaintiff files her Lawsuit with Procedural and Substantive Defects

On April 12, 2022, Plaintiff filed this lawsuit alleging violations of the First Amendment and the PRFPA. *See* Compl. Counts I-II. Procedurally, the PRFPA requires pre-suit notice as an administrative requirement unless the challenged government conduct is "imminent." 71 P.S. § 2405(c)(1). Plaintiff admits in her Complaint that she did not provide the requisite pre-suit notice mandated by the PRFPA. *See* Compl. at ¶ 44.

Substantively, Plaintiff's only theory of liability against the City takes the form of general, conclusory statements that "Defendants" deprived her of her religious freedoms. *See e.g.*, Compl. at ¶ 10; 29-49. Rather, she does not plead with specificity as to how *the City itself* contributed to or caused her harm. Importantly, Plaintiff makes no allegation that: (1) she was subject to the City Vaccine Policy; (2) the City itself denied Plaintiff's Request; or (3) that the City specifically engaged in any action or inaction that caused her harm. To the contrary, Plaintiff's allegations confirm that all decisions related to her employment with the DAO (from hiring, to Plaintiff's Request, to her denial, and through ultimate separation) were made by Krasner and the DAO, under the DAO Vaccine Policy. *See* Compl. at ¶ 11-28.

## III.    LEGAL ARGUMENT

### A.    Legal Standard

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact such that summary judgment is proper as a matter of law. FED. R. CIV. P. 56(a). Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In her opposition, Plaintiff cannot simply rely on mere allegations, conclusory or vague statements, or general denials. *Id*. at 324. She must do more. Even if her responsive evidence "is merely colorable…or is not significantly probative," summary judgment is proper. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

### B.    Plaintiff's First Amendment Claim Fails for lack of Causation

Plaintiff's First Amendment claim fails for two independent reasons—both of which are threshold issues and stem from the undisputed fact that the City took no action or inaction that caused Plaintiff's alleged harm. First, though absent from the Count I heading, Plaintiff purports

to bring her First Amendment claim against the City under Section 1983. *See* Compl. at ¶ 3. Yet, there is no municipality liability because Plaintiff cannot demonstrate any direct causal link between the City Vaccine Policy and her alleged harm. Second, and for these same reasons, Plaintiff also has no standing to bring a First Amendment claim against the City because she cannot show that her harm is "fairly traceable" to any City conduct. For both independent reasons, Plaintiff's First Amendment claim against the City should be dismissed.

1.      <u>Plaintiff's Claim fails under *Monell*</u>

To find a municipality liable under Section 1983, a plaintiff must prove the existence of a policy or custom that resulted in a constitutional violation. *Williams v. Ponik*, 822 Fed. Appx. 108, 112 (3d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). A *Monell* claim requires a plaintiff to: (1) identify a municipality's policy, custom, or practice that deprived her of her constitutional rights; (2) demonstrate that the municipality acted deliberately and was the moving force behind the deprivation; and (3) establish that her injury was caused by the identified policy or custom. *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *6 (W.D. Pa. Sept. 30, 2021) (citing *Bell v. City of Philadelphia*, 629 Fed. App'x 214, 216 (3d Cir. 2015)).

To meet the demands of *Monell*, Plaintiff must identify the City policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" *Murphy v. Doe Police Detective #1*, No. CV 20-2230, 2021 WL 4399646, at *5 (E.D. Pa. Sept. 27, 2021). As pled, Plaintiff's Complaint alleges that the City Vaccine Policy deprived her of her First Amendment rights. Compl. at ¶ 32-40. This claim fails on every element because Plaintiff cannot demonstrate any direct causal link between the City Vaccine Policy and her alleged harm.

*The City Vaccine Policy did not Apply to Plaintiff nor was the City a "Moving Force" behind her Alleged Harm*

First, the City Vaccine Policy did not deprive Plaintiff of her constitutional rights because, as an exempt and non-represented employee, Krasner's DAO Vaccine Policy applied to Plaintiff and all actions taken were in accordance with the DAO Vaccine Policy created by the DAO. Ex. C, Madden Dep. at 43:11-19; 46:13-18; 51:4-17; Ex. B, Krasner Dep. at 157:5-8. Based on Krasner's exercised authority, there is no City policy that could have influenced this decision in any way. Therefore, Plaintiff cannot identify a policy, custom or practice by the City that could have deprived her of her constitutional rights. [6]

Second, the City could not be a "moving force" behind any alleged deprivation as a matter of law because Krasner and the DAO controlled the terms and conditions of Plaintiff's employment. As explained above, Krasner exercised his own discretion and authority to implement his mandates over his exempt and non-represented employees, like Plaintiff. In doing so, Krasner applied his own DAO Vaccine Policy to Plaintiff's Request and he was the decision-maker in choosing to deny that Request. *Round v. City of Philadelphia*, No. CV 19-3513, 2020 WL 2098089, at *7 (E.D. Pa. May 1, 2020) (dismissing the City where plaintiff could not prove the City was involved with the challenged conduct under Section 1983; "The City cannot be held liable for an order it did not issue").

Quite literally, there is no City action to point to. The City was not involved in creating, implementing or applying the DAO Vaccine Policy and it played no role in reviewing or determining Plaintiff's Request. Ex. A, Listenbee Dep. at 30:11-24; 116:9-117:5. Thus, as a matter of law, the City could not have acted deliberately as the "moving force" behind Plaintiff's alleged

---

[6]     The City does not concede that Plaintiff can prove her constitutional rights were violated by any Defendant.

harm. *Monell*, 436 U.S. at 658 ("a municipality or municipal agency may only be held liable for the injuries *directly attributable* to its actions.") (emphasis added).

<blockquote>

(b)    *Plaintiff Concedes that the City Vaccine Policy was not the Cause of her Harm*
</blockquote>

Plaintiff's Complaint, testimony and admissions foreclose any argument that the City caused her harm. Plaintiff fails to proffer any support (other than conclusory statements) for her allegation that the City had a policy or custom that applied to her, and that the City Vaccine Policy caused her harm or deprived her of her constitutional rights. There is no allegation with teeth in the Complaint that explains *how* the City Vaccine Policy caused the Plaintiff any harm. Importantly, Plaintiff makes no allegation that: (1) she was subject to the City Vaccine Policy; (2) the City itself denied Plaintiff's Request; or (3) that the City engaged in any action or inaction that caused her harm. To the contrary, Plaintiff's true allegations and confirmed by the factual record and make clear that all decisions related to her employment with the DAO (from hiring, to Plaintiff's Request, to her denial, and through ultimate separation) were made by Krasner and the DAO, under the DAO Vaccine Policy. *See* Compl. at ¶ 11-28. Plaintiff's testimony and admissions in this case also concede the point. *See* Ex. O, Pl. RFAs; Ex. N, Pl. Dep. at 218:21-219:1.

Accordingly, Plaintiff's alleged harm was not caused by the City Vaccine Policy. Rather, the harm complained of stems from the actions or inactions made by Krasner.[7] It is undisputed that the DAO Vaccine Policy applied to Plaintiff. It is further undisputed that Plaintiff applied to Krasner for her religious exemption request, under the DAO Vaccine Policy and Krasner denied

---

[7]    The City denies that Plaintiff meets her burden of proof in this matter against Krasner and further denies that any actions taken by Krasner violated Plaintiff's constitutional or statutory rights as alleged in the Complaint. Regardless, Plaintiff cannot impute the City for actions taken by Krasner. *Reaves v. Vaugh*, No. 00-2786, 2001WL936392 at* 4 (E.D. Pa., Aug. 10, 2001) (vicarious liability does not apply to Sec. 1983 claims). To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged. *Monell*, 436 U.S. at 692–95.

the Request—no one else. Therefore, as a matter of law, no City policy caused Plaintiff any harm. *Williams v. Borough of Sharon Hill*, Civ. A. No. 12-5395, 2013 WL 4743471, at *3 (E.D. Pa. Sept. 4, 2013) (liability under Section 1983 attaches to a municipality only when an injury is caused by the execution of the government's policy or custom).

        2.    <u>Plaintiff Lacks Standing to Bring this Action Against the City because No Harm is "Fairly Traceable" to the City</u>

Article III of the Constitution requires a "case or controversy" between the parties. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340-41 (2006). To meet this standard, the plaintiff must show: (1) she suffered an injury-in-fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by the defendant; and (3) the injury would likely be redressed by judicial relief. *Kaymak v. AAA Mid Atl., Inc.*, 529 Fed. App'x 222, 224 (3d Cir. 2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *DaimlerChrysler*, 547 U.S. at 341 ("If a dispute is not a proper case or controversy, the courts have no business deciding it…"). Plaintiff bears the burden to prove all elements existed at the time of filing for each cause of action. *In re Schering Plough Corp.*, 678 F.3d 235, 244 (3d Cir. 2012). If she cannot meet her burden, the court lacks jurisdiction and the claim must be dismissed. *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022).

For the reasons argued *supra*, and as an additional basis for summary judgment, Plaintiff lacks standing for failure to show any harm was likely caused by the City. Further, Plaintiff's Complaint only relies on liability in the abstract and fails to articulate how the City itself caused her harm. *See Moore v. Johnson & Johnson*, 83 F. Supp. 3d 629, 630 (E.D. Pa. 2014) ("[i]f the injury-in-fact prong focuses on *whether* the plaintiff suffered harm, then the traceability prong focuses on *who* inflicted that harm.") (emphasis in original). There is no action or inaction by the

City that creates a case or controversy between the City and Plaintiff and this Court should dismiss her First Amendment claim.

(a)      <em>District Attorney Krasner Exercised his Authority to Deny Plaintiff's Request</em>

Plaintiff cannot meet her burden to establish standing as a matter of law because her alleged harm and the conduct complained of (the Plaintiff's Request, denial and ultimate termination) is not traceable to any action or inaction by the City. *Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000) (Causation is only met where Plaintiff can show that the alleged harm was "fairly traceable" to the defendant.).[8]

The facts as stated above support the legal conclusion that as a matter of law, the City could not have caused any alleged harm because it was Krasner who exercised his authority to review, approve or deny Plaintiff's Request. *Corman v. Torres*, 287 F. Supp. 3d 558, 571 (M.D. Pa. 2018) (If the defendant's action or inaction would not have had an impact, Plaintiff cannot demonstrate causation). Plainly, there is no conduct by the City which is "fairly traceable" to Plaintiff's alleged harm. *See e.g., J.B. v. Woodard,* 997 F.3d 714, 719-720 (7th Cir. 2021) (dismissing plaintiff's First Amendment claim for lack of standing on causation grounds; "the defendant had nothing to do with the [conduct], which was caused by the state court"). Instead, the alleged harm in this case flows only from decisions and actions taken by the DAO—thus any alleged harm originates from a third party and not the City. *Lujan*, 504 U.S. at 560–61. The undisputed facts as set forth above are fatal to Plaintiff's burden to show causation as to the City.

---

[8]     An indirect causal relationship will only suffice if Plaintiff can show a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant" such that there is a "substantial likelihood" that the defendant's conduct caused the plaintiff's harm." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016); *Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals, Inc*., 913 F.2d 64, 72 (3d Cir. 1990).

(b)    *Plaintiff's Claims against the City are Merely Framed in the Abstract*

The broad allegations in the Complaint make clear that any alleged wrongdoing against the City is entirely framed in the abstract with no regard for the facts of this case. Despite conflating the issue in her Complaint, the City and the DAO have two entirely separate policies. *See* e.g., Compl. at ¶ 23 ("the Defendants COVID-19 Vaccine Mandate violates Plaintiff Spivack's fundamental dictates of religion…"). This type of amorphous and undefined pleading is insufficient to demonstrate causation because Plaintiff does not and cannot point to a *single* action or inaction by the City that caused her alleged harm. *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) (where the defendant has no role in the causal chain, there can be no causation sufficient to establish standing).

Here, the City Vaccine Policy quite literally has *nothing* to do with the Plaintiff, her Request, or her claims against Krasner. The City: (1) was not involved in developing or promulgating the DAO Vaccine Policy; (2) never reviewed Plaintiff's Request; and (3) played no role in whether the Plaintiff's Request would be granted or denied. Ex. A, Listenbee Dep. at 30:11-24; 116:9-117:5; Ex. C, Madden Dep. at 145:3-148:17. Thus, Plaintiff's First Amendment claim fails the basic causation requirement necessary to demonstrate standing and should be dismissed.

**C.    Plaintiff's PRFPA Claim is Procedurally and Substantively Defective[9]**

1.    Plaintiff Failed to Provide Written Notice and No Exception Applies

The PRFPA required Plaintiff to provide Defendants with 30-days written notice as an administrative prerequisite to suit. She failed to exhaust this administrative duty and her claim must fail as a matter of law. 71 P.S. § 2405(b) requires a plaintiff to provide written notice at least

---

[9]    Should this Court dismiss Count I, it should also decline to extend supplemental jurisdiction over Plaintiff's state law claim under the PRFPA. *See* 28 U.S.C. § 1367(c)(3).

30 days prior to filing her lawsuit. 71 P.S. § 2405(b). Written notice is only excused under four limited exceptions. *See* 71 P.S. § 2405(c)(1)-(4). Plaintiff claims that she was discharged from the notice requirement under the Section 2405(c)(1) exception because "the exercise of governmental authority which threatens to substantially burden the [her] free exercise of religion [was] imminent." *See* Pl. Compl. at ¶ 44. The undisputed facts do not meet this exception.

"Imminent" means: ready to take place, impending or immediate.[10] *See* Merriam-Webster's New Edition Dictionary (2016); *Burton v. Wetzel*, No. 1:16-CV-1953, 2017 WL 4284345, at *9 (M.D. Pa. Sept. 27, 2017) (harm is "imminent" where it is "immediate"). Thus, under Section 2405(c)(1), Plaintiff must show that the "governmental exercise of authority which allegedly threatened to burden her free exercise of religion" was "ready to take place" or "impending" at the time of the filing of her complaint. If the challenged government action which allegedly threatened to burden her religious freedoms occurred *before* a plaintiff files her lawsuit, the harm is not "imminent" and written notice is required. *See e.g.*, *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, n. 6 (5th Cir. 2013) (dismissing plaintiff's complaint for failing to provide written notice and finding that the imminent action exception did not apply under the substantially similar Texas Religious Freedom Protection Law where plaintiff filed suit after her alleged harm).

Plaintiff was required to provide written notice and her failure to do so warrants dismissal. Plaintiff first hired counsel in December when she learned she would need to file her Request under the DAO Policy and she understood termination was possible at that point. Ex. N, Pl. Dep. 159:6-19. Then, on March 4, 2022, she was informed her Request was denied and was told the

---

[10]     The PRFPA does not define "imminent" but the term is unambiguous and this Court can affix its plain meaning. *Montgomery Cnty. Off. of Child. & Youth v. Dep't of Pub. Welfare*, No. 376 C.D. 2008, 2008 WL 9405030, at *3 (Pa. Commw. Ct. Oct. 8, 2008) (relying on Webster's Dictionary to determine the meaning of the term "imminent" as used in Child Protective Services statute).

consequences of failing to vaccinate. Ex. N, Pl. Dep. at 142:13-20. By March 21, 2022, after failing

to comply with the DAO Vaccine Policy within the compliance deadline, Plaintiff was placed on

unpaid leave and was eventually terminated on April 8, 2022. Ex. P, April 4, 2022 Email from

Thomas. All of which occurred *before* she filed this lawsuit on April 12, 2022. *See* Compl. Any

alleged conduct that she claims "threatened to substantially burden her free exercise of religion"

already occurred before she brought this action under the PRFPA. As such, Plaintiff cannot

demonstrate that any alleged conduct was "ready to take place" or "impending;" so no action was

"imminent."[11] Because Plaintiff failed to give notice before filing this action, and no exception

applies, her claim under the PRFPA is barred as a matter of law.

> 2. <u>There is no City Action that Substantially Burdened Plaintiff's Religious Freedoms</u>

For the same reason that Plaintiff's constitutional claim fails, so too does her state claim.

Under the PRFPA, "an agency shall not substantially burden a person's free exercise of religion,

including any burden which results from a rule of general applicability," unless the burden is "in

furtherance of a compelling state interest" and "the least restrictive means of furthering the

compelling interest." 71 P.S. § 2404(a)-(b). A "substantial burden" on an individual's free exercise

of religion occurs when an agency: (1) significantly constrains or inhibits conduct or expression

mandated by a person's sincerely held religious beliefs; (2) significantly curtails a person's ability

to express adherence to the person's religious faith; (3) denies a person a reasonable opportunity

to engage in activities which are fundamental to the person's religion; or (4) compels conduct or

expression which violates a specific tenet of a person's religious faith. 71 P.S. § 2403.

---

[11]     It was for this same reason that Plaintiff's injunctive relief was denied. *See* Doc. 20, Order on Pl. TRO at p. 3 ("Furthermore, her failure to move for injunctive relief for nearly a month after her termination (and some two months after she was informed that she would be terminated if she failed to get vaccinated) impugns any claim that she faces **immediate**, irreparable harm from Defendants' vaccine mandate") (emphasis added).

As a threshold issue, Courts dismiss claims under the PRFPA when a plaintiff fails to demonstrate *how* the defendant acted in such a way that substantially burdened the plaintiff's free exercise of religion. *See e.g.*, *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare*, 989 A.2d 52, 56 (Pa. Commw. Ct. 2010) (dismissing plaintiff's claim for failure to identify which regulation impacted the free exercise of religion or specifically how it did so); *Com. v. Parente*, 956 A.2d 1065, 1073 (Pa. Commw. Ct. 2008) (holding that enforcement of city's noise control ordinance did not "substantially burden" criminal defendant's right to the free exercise of religion in violation of the PRFPA because it did not restrict any activities that were fundamental to defendant's religion). Thus, if a plaintiff cannot articulate how the particular defendant burdened her protected rights, her claim fails under the PRFPA.

As already belabored, Plaintiff has not, and cannot, point to a single action or omission by the City to demonstrate how it might have substantially burdened her free exercise of religion. *See supra*, Sec. III, B. For this reason, her PRFPA claim should be dismissed with prejudice.

### D. The City is not a Necessary Party to this Action

With no viable theory of liability left, Plaintiff may argue that the City must be liable simply because it is Plaintiff's employer and a necessary party to this litigation. Not so. The DAO can be sued separate and apart from the City. *See Sourovelis*, 103 F. Supp. 3d at 710 (denying the Philadelphia DAO's motion to dismiss and holding it was an entity subject to suit separate and apart from the City).

In general, all lawsuits against any department of the City must be brought in the name of the City itself under 53 P.S. § 16257. However, under the statute, the City is only a necessary party to litigation when a City "department" is sued. *See e.g.*, *City of Philadelphia v. Glim*, 149 Pa. Commw. Ct. 491, 496 (1992) (finding the Philadelphia Fire Department cannot be sued separately because City departments have no independent corporate existence). The DAO is not a

"department."[12] *See Sourovelis*, 103 F. Supp. 3d at 710 (the DAO is technically not a department because the office was created by PA state law and the Home Rule Charter did not create the DAO as a department or agency). Therefore, the City is not required to be a named Defendant.

Third circuit precedent, *Reitz v. County of Bucks*, does not change this conclusion because the *Reitz* Court was not beholden to 53 P.S. § 16257. 125 F.3d 139, 145 (3d Cir. 1997) (finding that the Bucks County DAO could not be sued separately under Section 1983 because plaintiffs "presented no evidence of any actionable custom or policy on the part of this Office in its prosecutorial capacity."). Though the *Reitz* Court found that plaintiff *substantively* failed to make out Section 1983 liability—it also summarily remarked in dicta that the "Bucks County DAO is not an entity for purposes of Section 1983 liability" without citing any legal rational or authority. *Id*. at 148. This spawned a line of decisions which have held that the Philadelphia DAO is not subject to Section 1983 liability, without giving any credence to 53 P.S. § 16257. *Sourovelis*, 103 F. Supp. 3d at 711 (citations omitted). As the Honorable Eduardo Robreno correctly notes, "[s]ince *Reitz*, district courts have relied on this single line without any explanation, independent analysis, or scrutiny into the precise contours of Section 16257." *Sourovelis*, 103 F. Supp. at 711-12. Judge Robreno's thoughtful and careful analysis under 53 P.S. § 16257 makes clear that the Philadelphia DAO is not a "department" and *Reitz* does not disturb that conclusion. Therefore, the City is not a necessary party; the DAO can be sued separately, and Plaintiff cannot demonstrate otherwise.

---

[12]     This lawsuit is effectively brought against the DAO itself because Krasner is being sued in his official capacity as district attorney. Compl. at ¶ 8; *Est. of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015) ("A suit against a city official named in his or her official capacity is a suit against the entity he or she represents.").

## IV. CONCLUSION

For the foregoing reasons, Defendant City of Philadelphia respectfully requests that this Honorable Court grant its Motion for Summary Judgment, and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

Dated:    September 13, 2022          CLARK HILL PLC

*/s/ Jessica D. Reilly*

Jessica D. Reilly, Esq. (PA 324575)
Lauri A. Kavulich, Esq. (PA 56476)
2001 Market Street, Suite 2620
Philadelphia, PA  19103
(215) 640-8500
jreilly@clarkhill.com
lkavulich@clarkhill.com

*Attorneys for Defendant City of Philadelphia*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 13, 2022, a true and correct copy of the foregoing has been served upon all counsel of record via this Court's CM/ECF Service.

*/s/ Jessica D. Reilly*
Jessica D. Reilly, Esq.